JACOB ZIMMERMAN v. KEARNEY COUNTY BANK.

FILED SEPTEMBER 21, 1899.   No. 8,693.

1. **Witnesses: IMPEACHMENT: STATEMENTS OUT OF COURT.** A witness may be impeached by showing that he made statements out of court contrary to those made in court in regard to some matters relevant to the issue.

2. ———: ———: ———. Such declarations are not substantive evidence of the fact declared, unless made against interest by one who is a party to the record.

3. ———: ———: ———. Such declarations are received to aid the court or the jury in estimating the character and credibility of the witness.

4. ———: ———: ———. To lay the foundation for such testimony the attention of the witness should be directed, with reasonable certainty, to the time, place and circumstances of making the declarations, so that he may refresh his recollection and reconcile, if he can, his declarations with his evidence.

REHEARING of case reported in 57 Nebr., 800. *Judgment below reversed.*

*Ed L. Adams* and *F. G. Hamer,* for plaintiff in error.

*J. L. McPheely, contra.*

Sullivan, J.

At the January term an opinion was filed affirming the judgment of the district court. See *Zimmerman v. Kearney County Bank*, 57 Nebr., 800, 78 N. W. Rep., 366. Afterwards a rehearing was allowed and the cause again submitted. The insistence of defendant in the brief now before us is that we were wrong in holding that there was no error in the exclusion of evidence offered on the trial. It appears from the record that the plaintiff took the deposition of W. H. Paddock and read to the jury the examination in chief. This testimony was to the effect that the firm of Finch & Paddock had sold the note in suit to the plaintiff, and had no longer any interest therein, and that Rogers and Chapin, the president and cashier of the bank, had no knowledge at the time of the purchase that the note was usurious, or that there existed any other defense to its enforcement. On cross-examination Mr. Paddock testified as follows:

"Q. Now, Mr. Paddock, hadn't you tried in person to collect this note in suit of the defendant since the time you claimed to have sold it?

"A. No, sir.

"Q. Didn't you in the early part of September, 1893, in Holdrege, Neb., in front of the United States National Bank, ask Zimmerman for the money on this note and at that time state to him that you and Finch were still the owners of this note and that you knew defendant had sold a farm and had the money for it and demanded of him payment of this note?

"A. No, sir; I did not demand the money for the note, nor I didn't tell him that Finch and Paddock owned it. I met Zimmerman in September, 1893, as stated, in front of the bank and asked him why he did not pay Rogers and Chapin this note. Jacob Zimmerman said to me that he had sold a farm and part of the money which he had received from the sale of the farm was in certificates of deposit in one of the banks in Kearney, Nebraska,

and the certificates were time certificates and could not get the money until they matured.

"Q. Mr. Paddock, didn't you at the time of this conversation propose to Zimmerman, the defendant, that you would cash the time certificates and give him credit on the note?

"A. No, sir.

"Q. Now in this connection didn't Zimmerman tell you that the Kearney County Bank claimed to own this note, and you answered that it did not, but that you owned it and you would cash those certificates and give him a receipt and have the amount credited on the note?

"A. No, sir; he did say the Kearney County Bank claimed to own the note, but I did not say that Finch and Paddock owned the note, or that we would cash these certificates and give him credit on the note.

\*	\*	\*	\*	\*	\*	\*

"Q. Now, Mr. Paddock, didn't you in September or October, 1892, and after you claimed to have sold this note to plaintiff, have a conversation with the defendant Zimmerman in Minden, Nebraska, on the north side of the square near Thorne's Block in which you told Zimmerman that Finch & Paddock, or we, referring to Finch & Paddock, owned this note in question?

"A. Never told Zimmerman after July 18, 1892, that we, or Finch & Paddock, owned the note in question in Minden or any other place."

These questions and answers were offered by the defendant as part of Paddock's testimony, but were, on plaintiff's objection, excluded by the court. The defendant then offered to prove that Paddock had, at the times and places referred to in the foregoing questions, stated to Zimmerman that Finch & Paddock were the owners of the note; that it had not been sold to the bank, but was merely held by it for collection. These offers were rejected on the theory, as we understand it, that they were not admissible as original evidence for the defendant and were, therefore, not admissible for the purpose of im-

peachment. That a witness may be impeached by showing that he made statements out of court contrary to those made in court in regard to some matter relevant to the issue is believed to be the doctrine of all courts administering our system of jurisprudence. The cases in which the rule is recognized and enforced are almost as thick as leaves in Vallombrosa. Many of them are collected in 29 Am. & Eng. Ency. Law, 789. Others will be found in the note to *Allen v. State*, 73 Am. Dec. [Ga.], 760. Such declarations can not, of course, be received as substantive evidence of the fact declared, unless made by one who is a party to the record. They are not competent to prove any of the facts in controversy, but are received to discredit the testimony of the witness by showing him to be untruthful. It has often been held that a witness may not be impeached by showing that his testimony concerning some fact does not coincide with a previously expressed opinion in regard to the same matter; and the authorities everywhere hold that the extra-judicial statement of a witness will not be received to impeach him upon a point entirely collateral to the issue. But these rules have no application whatever to the question here presented for decision. The testimony of Paddock touching the sale of the note to the plaintiff was relevant to the issue. The imputed statements were plainly contradictory of such testimony and should have been given to the jury to aid them in estimating the character and credibility of the witness. That an adequate foundation was laid for the impeaching evidence is shown beyond cavil by the fact that even Paddock distinctly remembered one of the occasions on which the alleged contradictory declarations were made. The rule is grounded in common sense, and only requires that the attention of the witness be directed with reasonable certainty to the time, place and circumstances, so that he may refresh his recollection and reconcile, if he can, his declarations with his evidence. See *Kelsey v. Layne*, 28 Kan., 218; *Pendleton v. Empire Stone Dressing Co.*, 19 N.

Y., 13; *Evansville & T. H. R. Co. v. Montgomery*, 85 Ind., 494. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

HARRISON, C. J.

I adhere to the former opinion in this case.