BELVA STANLEY, APPELLEE, v. SUN INSURANCE OFFICE, APPELLANT.

FILED FEBRUARY 21, 1934. No. 28725.

*Cook & Cook* and *Henry Mencke,* for appellant.

*Patrick & Smith, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and CHASE and ELDRED, District Judges.

PAINE, J.

This is an action to collect damages upon a fire insurance policy on the contents of a dwelling-house destroyed February 21, 1932. The jury returned a verdict for plaintiff in the sum of $1,800.

The petition alleges that the defendant issued a $2,000 fire insurance policy September 1, 1930, through its agent at Blair, against damage by fire to household furniture, jewelry, and wearing apparel while located in a dwelling-house on a farm in Washington county, Nebraska; that immediately after the fire the plaintiff notified the agent writing the policy, and sent notice by registered letter to the defendant at its office in Chicago; later filed proof of loss and demanded payment, and the company refused to pay the same. After certain preliminaries were disposed of, the defendant filed answer, denying that the property destroyed was of the value of $2,000, admitting the receipt of proofs of loss, and charging that the plaintiff and her husband, George Stanley, wrongfully and fraudulently entered into an unlawful conspiracy to burn said dwelling-house, and that the husband, with her consent and connivance, wilfully, unlawfully, and intentionally, set fire to said dwelling, thereby forfeiting all rights to the policy; that the statements contained in the proof of loss were false and untrue, and that the property destroyed by fire was worth not to exceed the sum of $1,000. To this the plaintiff filed a general denial.

In the absence of the jury, Mr. Patrick, of plaintiff's counsel, moved for an order excluding Henry Mencke, county attorney, from acting as an assistant attorney for

the defense, citing section 26-906, Comp. St. 1929, and several witnesses were called in support of the motion, and Henry Mencke, county attorney, was called as a witness in resistance of the motion. Arguments were then made, and the motion to exclude the county attorney from so acting was overruled by the court, and the jury duly impaneled and the opening statements made. Thereupon, the jury were excluded from the room, and it was brought to the attention of the court that two witnesses called by the defendant had been tampered with and were assuming a hostile attitude towards the defense. These two matters are stated in this record to show somewhat of the strain and bitterness existing at this trial. The trial of the case consumed several days, and the jury returned a verdict for $1,800 for the plaintiff.

One of the principal assignments of error charged is that the court erred in refusing to permit counsel for defendant, while its witness Orwin L. Miller was testifying, to interrogate him in regard to a former sworn statement which had been made by him to the deputy state fire warden regarding what he observed at the time of the fire, which statement was absolutely contradictory to his sworn testimony on the trial, and counsel for the defendant being taken entirely by surprise, and, further, that the court erred in not allowing the defendant to make a proper record in order to predicate error upon this erroneous ruling.

The bill of exceptions discloses that Orwin L. Miller testified that he was 20 years of age, was living at Goodwin, Dakota county, now, but that for about a year he had lived with his parents in the little brick house on the Stanley farm, and his father was a tenant of Dr. Stanley, husband of plaintiff, and that they were living there on the day of the fire; that on the Sunday morning when the fire occurred he was out in his yard working on his car, two or three hundred yards from the Stanley house. He and his father saw smoke coming out around the chimney when they got over there, and his father

knocked out a window on the screened porch. The smoke had the smell of oil, which could have been from waxed floors or composition board. That he then broke in the door with an axe, as it was locked; that they cleared out the contents of some of the downstairs rooms.

Mr. Cook then asked this witness, Orwin L. Miller, whether he had made a statement before the deputy fire warden of this state. Objection was made, and the ruling of the court was this: "I don't think we care." Again Mr. Cook started to ask the question: "And at that time were you asked by the deputy marshal"—to which Mr. Patrick objected as an attempt to cross-examine his own witness; and Mr. Smith, also of counsel for plaintiff, added the objection that it was an attempt to impeach his own witness; but the court permitted him to finish the question, and he completed the question already started by adding—"certain questions relative to what you saw and what you observed as you reached the Stanley home, and what you smelled when the window was knocked in?" Without further objection, the court said: "I think we will stop there. We have two questions now." Then an objection was made that it was an attempt to cross-examine and impeach his own witness and improper re-direct examination, and the court said: "I think, Mr. Cook, you should not attempt to introduce the statement made by this witness in that examination." Mr. Cook then asked to make a record, and asked that the jury be excused, and the court said: "Put it in right as you are required to do, if called for." Then Mr. Cook dictated a long statement to the reporter, stating in brief that the plaintiff was taken by surprise by the testimony of the witness and desires to direct the attention of the witness to a statement in writing made by this witness to the deputy fire marshal, which answers are contrary to the statements made by the witness now on the stand, and he desires to direct witness' attention to the statement made at that time, which statement is not offered for the purpose of impeaching the witness, but to show that he

has made contrary statements, or to refresh his memory, and that counsel has undertaken to lay the proper foundation for that purpose, but has been prevented from doing so by the ruling of the court. The reporter then identified the statement made May 23, 1932, in writing to Horace M. Davis, the deputy fire marshal, and signed by the witness, Orwin L. Miller, and consisting of four pages; and Attorney Cook then stated, in brief, that, if permitted to do so, he would have directed the witness' attention to the statement therein made when he was asked if he detected the odor of anything, and that said witness in reply to said question stated that he detected a strong odor of gasoline or of coal-oil, and that the explosion, which occurred when his father kicked in the window, knocked his father back on the ground. Attorney Cook stated that he desired, if permitted to do so, to direct the witness' attention to his signature on the statement and refresh his recollection, but if witness denies that he made such a statement, he does not propose to attempt to offer the same in evidence to impeach his own witness, as that would be violative of the rules, and that no further foundation can be laid for the reason that counsel, as shown by the record, has been foreclosed by the orders of court. "The Court: You have a written statement there signed by the witness? Mr. Cook: Yes. The Court: Submit it, please; I would like to look at it. (Mr. Cook hands exhibit 4 to the court.) Mr. Smith: To all of which offer and each and every part thereof, together with exhibit 4, the plaintiff objects for the reason that the same is incompetent, irrelevant, and immaterial, and not proper redirect examination, and an attempt by the defendant and its counsel to impeach its own witness by an alleged statement made upon another occasion. The Court: I think the objection will be sustained, and the jury will not consider any of this matter which is rejected, in making up their verdict." Thereupon, the witness, Orwin L. Miller, was excused from the stand.

This action of the trial court is set out at length as the

fifth assignment of error, in that the statements of fact of the witness Orwin L. Miller, made to the deputy fire warden in writing, were diametrically opposed and contradictory to his sworn testimony at the trial; that said witness was unfriendly and counsel for defendant was taken by surprise; that the court erred in refusing to allow defendant to even make a proper record in said matter.

The general rule in Nebraska in relation to this matter was for many years, as elsewhere, that a person who calls a witness thereby recommends him as worthy of belief, and afterwards cannot be permitted to introduce evidence which has no tendency other than to impeach said witness. *Nathan v. Sands,* 52 Neb. 660; *Blackwell v. Wright,* 27 Neb. 269. One is not permitted to prove contradictory statements of his own witness and thereby discredit him, and it is improper for counsel in argument to assert contradictory statements of the witness. *Merkouras v. Chicago, B. & Q. R. Co.,* 101 Neb. 717; *Masourides v. State,* 86 Neb. 105.

In *Crago v. State,* 28 Wyo. 215, it is shown that, under the Code Justinian, one was not allowed under the Roman law to generally impeach his own witness, and then there is shown the gradual change to the modern rule.

In 6 Jones, Commentaries on Evidence, 4794, it relates that the first time this rule appears in England it simply recites that "Holt, C. J., would not suffer the plaintiff to discredit a witness of his own calling, he swearing against him. * * * Still later the principle is said to have been adopted in Warren Hasting's case, June 11, 1789, when Thurlow, Lord Chancellor, refused, without giving any reason, to allow the prosecution to establish that a certain portion of a paper which they had introduced was untrue." *Adams v. Arnold,* Holt K. B. 298, 90 Eng. Reprint, 1064.

This matter is also treated historically to the length of 45 pages in 2 Wigmore, Evidence, 252-297. This text shows that in the earliest times, in the primitive modes

of trial, witnesses were merely "oath helpers," gathered into a band to "swear him off" against another band swearing the other way. The article shows the injustice of this rule, and that it was changed in England by statute in 1854, and later in some of our states. A summary of this complete analysis by Wigmore is set out at some length by Judge Letton in the case of *Penhansky v. Drake Realty Construction Co.*, 109 Neb. 120, concluding that the rule as to the contradiction of one's own witness, as stated in the last three Nebraska cases cited above, is set aside on the grounds, briefly condensed from Wigmore, that the rule is a mischievous one and cannot promote justice, while in many cases it promotes injustice, for if a witness betrays the party who calls him and falsifies in every statement which he makes, the jury has no alternative but to accept and find an unjust verdict on evidence which both the parties know to be the rankest perjury.

The general rule that a party, who is surprised by unfavorable testimony given by his own witness, may inquire concerning previous inconsistent statements made by him, is subject to several limitations. One is that the testimony must be a definite statement of fact, and not a mere conclusion, as shown in *Lewis v. Miller*, 119 Neb. 765, 70 A. L. R. 532, where Judge Hastings found that, aside from conclusions contained in the statement, there was very little in the statement that might be deemed contradictory of the testimony given by the witness when testifying in behalf of the defendant, and that the conclusions contained in the statement would not have been admissible if she had been a friendly and willing witness, and decided there was no error in the trial court in refusing to receive in evidence written statements under those conditions.

Judge Eberly had occasion to examine the case of *Penhansky v. Drake Realty Construction Co., supra,* and held that, where it was shown that the facts were fully known to counsel when he called the witness to the stand, and

he could not have been misled or entrapped by statements appearing in the first deposition, and it is incredible that he could in any manner have relied upon or been deceived by the testimony, then the rule does not apply. *Blochowitz v. Blochowitz*, 122 Neb. 385.

Other exceptions to the rule occur when a party is compelled to call the adverse party as his own witness, or in those cases when one is bound by law to call a certain witness, even though he may be unfriendly or hostile, such as a subscribing witness to a will; and in *State v. Alexander*, 89 Kan. 422, it was held that the prosecution might prove that the witness called by it was drunk at the time of observing the occurrences to which he testified. The general tendency of the later decisions appears to be towards liberality in permitting impeachment of one's own witness in order to prevent an injustice.

But, aside from these and a few other reasonable limitations, if one has been surprised, misled, or entrapped into calling a witness because of his statements, either oral or written, made before trial, which were favorable to and relied upon by the party calling him, and relate to a material point at issue, and, when called, has testified contrary thereto, counsel should be permitted to show the statements which had been made before the trial. In most cases such departure from his original testimony will relate to only one or two items in the whole story of the witness, and there is no good reason why the party calling him should not get the benefit of his testimony on all the other points and yet be able to show that he is mistaken, or has changed his testimony on certain definite points. For the court to forbid this is to impose a captious and purposeless restriction, which suppresses a portion of the truth, and when the counsel calling such witness is not at fault, he should be permitted to repair this damage as far as possible. This may be done for the purpose of refreshing the memory of his witness, as well as for the purpose of probing the conscience of the witness and inducing him to correct his testimony.

It is proper to allow the party who called this witness to inquire concerning his previous inconsistent statements, for the purpose of showing the jury the circumstances which induced such party to call this witness.

Abundant citations covering the several phases of this question will be found in the long note in 74 A. L. R. 1042. The following cases will support this discussion of this troublesome question: *Hickory v. United States*, 151 U. S. 303; *Cady Lumber Co. v. Wilson Steam Boiler Co.*, 80 Neb. 607; *People v. Marsiglia*, 52 Cal. App. 385; *Arine v. United States*, 10 Fed. (2d) 778; *Estate of Dolbeer*, 153 Cal. 652, 15 Ann. Cas. 207.

It is the opinion of the court that in the case at bar the defense was clearly entitled to show that its own witness had changed his testimony as to a material fact in a manner harmful to the defense. Many other errors are argued in the briefs, but as a reversal is warranted because of this error which has been discussed at length, the others will not be set out in this opinion. For the reasons stated, the judgment of the trial court is reversed and new trial ordered.

REVERSED.