HARRY MASON, APPELLANT, V. CLYDE REYNOLDS ET AL., APPELLEES.

284 N. W. 257

FILED FEBRUARY 17, 1939. No. 30421.

*Dent & Deakins* and *William E. Shuman,* for appellant.

*Beeler,. Crosby & Baskins, Robert B. Crosby* and *Hoagland, Carr & Hoagland, contra.*

Heard before ROSE, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

Action for damages, brought against two young men who, while racing their cars, ran into plaintiff's car, and also against the owners of the two cars driven by the young

men. At the close of the plaintiff's testimony a motion was made to dismiss the action, on the ground that there had been a misjoinder of causes of action, together with several other motions, all of which were sustained by the court. Jury returned verdict finding in favor of each defendant as instructed by the court. Plaintiff's action was thereupon dismissed by the court. Plaintiff appeals.

The plaintiff's evidence discloses that on March 14, 1937, about 4 o'clock in the afternoon, plaintiff was driving a 1930 Model A Ford two-door sedan on East Second street in the city of North Platte, and while there were still residences on each side of the street, it was just outside of the city limits proper. The road was graveled, and about 22 feet wide, and plaintiff was driving slowly, perhaps 10 to 15 miles an hour.

Plaintiff was within 30 or 40 feet of the driveway into the home and place of business of William E. Thompson, a car wrecker, where he intended to get some repairs. Looking in his rear-vision mirror, plaintiff saw the first of two cars coming about 200 to 300 feet behind him, but he did not hold out his hand, because the car was coming too fast, and he intended to let it go by. Within two or three seconds after he saw the car in his rear-vision mirror, it flashed up alongside of him, and he has a memory of some one, with face turned towards him, laughing. The first he remembered clearly after that was some time during the night, when he became conscious at St. Mary's Hospital.

Mr. Thompson, proprietor of the car-wrecking place to which plaintiff was going, testified that he saw the plaintiff in his car, and that the Oldsmobile coupé struck the front of the Ford car, which turned it sidewise, leaving it in about the center of the street; that the Oldsmobile blew out a tire and went into the ditch on the south side of the road; that the Dodge, just behind, hit the Ford pretty heavily and broke off the posts under three mail-boxes, and went on about 100 feet and stopped in the ditch. Mr. Thompson ran out to the Model A Ford and found the plaintiff had been thrown into the back end of the car, and, while

not exactly unconscious, he wanted to know what had happened, and Rev. Kana, a Japanese minister, who lived across the street from Mr. Thompson, took him to the hospital.

James G. Dietz testified that the two cars were coming down the street at between 60 and 70 miles an hour. They were throwing up considerable dust. They were side by side at first, but one was a little ahead of the other at the time the accident occurred. He said that he was a little over a block away, and did not actually see it, but heard it.

The plaintiff called in evidence Richard Allen, 18 years of age, a senior in the high school, who was riding in the Dodge automobile, and gave the names of the two boys and the two girls who were riding in the Dodge. He testified that, before they drove off the end of the pavement, Moore passed them in the Oldsmobile; that he thought the Dodge was running 40 to 50 miles an hour, and did not change any when it struck the dirt road. When the Oldsmobile passed the Dodge it threw gravel on the windshield. In his opinion, the Oldsmobile was "doing somewhere around 70" when it passed them; then Reynolds increased the speed of the Dodge to 50 or 55, and hit the Mason car, which witness Allen had seen just before the Oldsmobile passed them, but could not see it just before they hit it, for the dust was so thick he could not see a thing, and was knocked out by the collision. He testified that Raymond Reynolds' four-door Dodge sedan was owned by his father, Clyde Reynolds, and that Raymond lived with his father.

Raymond Reynolds testified that he was 19 years of age, and lived with his father and mother, and that his father owned the 1936 model Dodge automobile that he was driving, but that he had only driven the Dodge once before, which was about three months before the accident. He said that his father was asleep, and he took the car without his consent. He had had a driver's license since he was 16 years old. He had dropped out of high school, and had been working for his father, eating and sleeping at home, and paying his own board at the rate of $9 a week. He delivered groceries for his father's store in a truck. He

said that the truck was sitting in front of his father's car, and so he took his father's car without permission. He claimed that he bought the truck through his father; that they traded in another car, which was licensed in his father's name, but that he had made the payments on it each week through his father.

The plaintiff offered to show by the witness on the stand that, after the truck was purchased from the Alexander Motor Company, it was involved in an accident, and that Clyde Reynolds, father of the witness, swore under oath that he was the sole owner thereof, and collected from the insurance company as the owner. The plaintiff stated that he made this offer to prove for the purpose of impeaching the witness upon the stand, who appeared unfriendly. This was objected to as incompetent, irrelevant, and immaterial, and the court sustained the objection to the offer on the ground that "you can't impeach your own witness."

The witness testified that, while he did not look at his speedometer, he always had the habit of driving around 50 miles an hour. He testified that when they left the pavement the Oldsmobile, going at that time around 70 miles an hour, went by him and honked the horn.

Plaintiff then laid a foundation for the introduction of exhibit No. 1, being a typewritten statement, signed by this witness. He admitted making a statement in attorney Deakins' office a few days after the accident, and admitted it was his signature at the bottom of exhibit No. 1, just above the line reading, "I have read the above and it is true."

Plaintiff then offered in evidence exhibit No. 1 for the purpose of impeaching the witness, on the ground that plaintiff had been surprised by his testimony, which was absolutely contrary to the written statement given, and insisted that plaintiff had a right to impeach a witness when he is hostile, and when plaintiff is surprised by his testimony. Defendants objected to the offer as incompetent, irrelevant, and immaterial, not binding upon the defendants, and for the further reason that it is an attempt on

the part of the plaintiff to impeach his own witness. The objection was sustained by the court.

Exhibit No. 1 was about two typewritten pages in length, and it was signed, "Ray Reynolds." It stated that he was 18 years of age, had graduated from the North Platte high school two years before, was employed by his father, driving a delivery truck for the grocery; that the Dodge sedan he was driving was owned by his father, and used as a pleasure car, and at the time he was driving it it was with his father's permission; that at the time of the accident he had speeded up his car to 50 to 55 miles an hour, and that Moore passed them as though they "were standing still;" that in his judgment Moore was going 75 to 80 miles an hour, with his back wheels jumping back and forth across the road; that he could not tell whether plaintiff Mason's car was stopped or moving because of the dust; that the dust was so bad he could not even see his radiator cap; that he did not see Moore hit Mason; that just as he put his foot clear down on the brake pedal he struck the Ford Model A, which threw his car over into the left ditch, knocked over some mail-boxes, and the first thing he noticed about the Moore car was that it had slid sidewise about 90 feet, and had turned clear around and was facing in a westerly direction, while Mason's car was on the south side of the road, facing in a northerly direction.

At the close of plaintiff's evidence, motion was made for a directed verdict for the father, Clyde Reynolds, on the ground that plaintiff had not proved any family car relationship, or that the son was using the car with the consent of the father.

A motion was made to direct a verdict in favor of Raymond Reynolds and Clyde Reynolds on the ground that there had been a misjoinder of causes of action, and no joint enterprise, no concert of action, and no indivisible injury or damage had been shown. "The Court: The motion will be sustained as to the father." Thereupon, a similar motion was made on behalf of Harry Haffner, because evidence fails to show any connection with defendant Moore

(who was driving Haffner's Oldsmobile), and the further motion that no joint enterprise has been shown, and further, because there is a misjoinder of causes of action, and that the four defendants are not joint tort-feasors. "The Court: It seems to the court's mind that the court should sustain this motion and all the motions."

The question of whether counsel may introduce a previous inconsistent written statement of a witness who had materially changed his testimony from a statement he had signed before the trial was fully discussed in *Stanley v. Sun Ins. Office,* 126 Neb. 205, 252 N. W. 807. It is true the general rule in Nebraska had been against allowing such impeachment of a witness. *Nathan v. Sands,* 52 Neb. 660, 72 N. W. 1030; *Merkouras v. Chicago, B. & Q. R. Co.,* 101 Neb. 717, 164 N. W. 719. We find a 45-page historical discussion of this question in 2 Wigmore, Evidence (2d ed.) 252-297.

*Penhansky v. Drake Realty Construction Co.,* 109 Neb. 120, 190 N. W. 265, settled the rule in Nebraska, as follows: "Where one has been misled or entrapped into calling a witness by reason of such witness, previous to the trial, having made statements to the party, or his counsel, favorable to the party's contention, and at variance with the testimony given at the trial, and the party believed and relied upon such statements in calling the witness, and is surprised by the testimony on a material point, he may, in the discretion of the court, be permitted to show the contradictory statements made before the trial."

To this holding we may add the reasons therefor: Counsel should be allowed to show such previous inconsistent statements of his own witness, for the reason of refreshing his memory, probing his conscience, and, if for no other reason, that he may show the court and jury the circumstance which induced him to call and vouch for such a witness. *Stanley v. Sun Ins. Office, supra.*

The ruling of the court in refusing to allow exhibit No. 1 to be received in evidence was prejudicial error, which requires a reversal of this case.

The question is raised, in the motion upon which the case was dismissed, as to whether there was a joint enterprise, and whether the drivers and owners of the cars causing the damage to the plaintiff were joint tort-feasors. This court has had this same question before it a number of times. *Schweppe v. Uhl,* 97 Neb. 328, 149 N. W. 789, involved an accident which occurred August 18, 1911, and was one of the early cases involving automobiles. Plaintiff was driving a team of horses attached to a wagon, and at a narrow place the defendants, each driving an automobile, came up from the rear and, by excessive rate of speed and loudly sounding the horns, frightened the team, which ran away, throwing plaintiff out, from which he suffered injuries. In this decision there is a citation from 1 Cooley, Torts (3d ed.) 247, which says: "The weight of authority will, we think, support the more general proposition that, where the negligences of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design, or concert action."

This court has held that, if separate, independent acts of negligence combine to produce an injury, each defendant involved therein is responsible for the entire result, even though the act of one alone might not have caused the injury. *Zielinski v. Dolan,* 127 Neb. 153, 254 N. W. 695.

In *Olson v. Hansen,* 122 Neb. 492, 240 N. W. 551, a farmer was driving his team, attached to a mower, along a public highway. Two cars, driving in the opposite direction, approached him. The driver of the first car stopped to visit with Olson, whereupon the second car collided with the first car in attempting to go around him, throwing the first car against the mower and injuring Olson, and it was again held: " 'An act wrongfully done by the joint agency or cooperation of several persons, or done contemporaneously by them without concert, renders them liable jointly and severally.' *Schweppe v. Uhl,* 97 Neb. 328."

In *Simmons v. Leighton,* 60 S. Dak. 524, 244 N. W. 883, it is said: "If injury was caused through combined negli-

gence of drivers of two automobiles, cause of action is joint and several, and recovery may be had against either or both." See, also, Berry, Automobiles (4th ed.) sec. 221.

In view of the evidence produced by plaintiff, and the authorities, we are inclined to the view that the trial court was not warranted in dismissing the action at close of plaintiff's evidence. Many other errors are relied upon for reversal, but it will be unnecessary to discuss them, for in another trial they may not occur. The cause is

REVERSED AND REMANDED.