HOWARD CORNELL v. STATE OF NEBRASKA.

299 N. W. 231

FILED JULY 3, 1941.   No. 30851.

*Spillman & Ptak,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Rush C. Clarke, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ., and POLK, District Judge.

PAINE, J.

An oral argument was allowed on the motion and brief for rehearing, limited to one question.

This case was first argued to this court September 24, 1940, and an opinion was released, affirming the conviction, but reducing a sentence of four years to two years.   This

opinion, written by Judge Johnsen (*Cornell v. State*, 138 Neb. 708, 294 N. W. 851), sets out in detail the facts of the case, and we will not now repeat that evidence.

Upon consideration of motion and brief for rehearing, an oral argument was ordered, limited to the question whether the impeachment of the witness Allison constituted prejudicial error. This supplemental opinion will be confined to that one question.

Stanley Allison was called as a witness by the county attorney, and testified that he was a married man, 22 years of age, his home being Norfolk, but right at the time of the trial he was running a cement mixer at the high school at Hoskins, Nebraska. He testified that he had worked off and on for Howard Cornell, the defendant, in his exchange or second-hand store in Norfolk, but that he was *not working for him on January 21, 1939,* on which day the information charges defendant received the stolen property. Witness Allison then testified: "I know I was working that day and went home early and went to the show after supper." He was then asked: "Did you not on the 17th day of February, 1939, in my office, in the presence of E. N. Anderson and Mildred J. Balentyne (Ballantyne), make a statement in answer to the question: 'Did you work for Howard Cornell in his second-hand store at 200 Norfolk avenue on the 21st day of January, 1939?' give the answer 'yes'? A. I don't remember it. I didn't see the statement." The record is then as follows: "Mr. Spillman: Defendant objects to the impeachment of his own witness. The Court: He is taken by surprise. He can impeach his own witness. Proceed."

Later in the trial Mildred J. Ballantyne, stenographer in the law office of Mapes & Mapes, testified that she had typewritten exhibit No. 7, and that the statement was read to Mr. Allison after it was typewritten, and she saw him sign it, and then she signed as a witness, as did E. N. Anderson.

Exhibit No. 7 consists of three pages of questions and answers. The questions were asked by the chief of police, and the important information in exhibit No. 7 is that he said that he worked for Howard Cornell, defendant, on the

21st day of January, 1939; that Lawrence Hale was also working there; that on the evening of that day he saw Lawrence Fischer and Alvin Luikens come into Cornell's second-hand store, first at 5 o'clock, and again about 7 o'clock, and about 9 o'clock they came back again, and the defendant told him and Hale to bring in "the stuff" from outside the east door. It was a red wheel and truck tire, 700-17, and they rolled it into the basement, and defendant Cornell told them to take off the wheel and paint it black, and that Stanley Allison and Lawrence Hale and defendant Cornell buffed the number off the tire with a soldering iron, and Cornell gave Allison $5 to give to Luikens, and when they were almost finished with the work defendant Cornell told them it was stolen. The language he used was, as reported by Allison: "He said he wanted to get it done, and get it out of there, because it was hot." The last question was: "Do you understand that this statement can be used against you? A. Yes." The exhibit was dated February 17, 1939.

The plaintiff in error in his original brief asked for a reversal upon the record made in the cross-examination of the witness Allison, and the court's instruction in trying to explain why exhibit No. 7 was received in evidence at all. In the motion for rehearing, it was insisted that the state was not surprised by the testimony of the state's own witness, Allison, and that the state abused the rules of law as to the admissibility of previous inconsistent statements. These statements are the errors assigned in the briefs of the plaintiff in error.

In the twelfth and thirteenth paragraphs of the motion for a new trial, it was alleged that the court erred in admitting the signed statement of Stanley Allison in an effort to impeach its own witness, and erred in its rulings with respect to said exhibit, changing and modifying its rulings after the exhibit had gone to the jury, which so confused the jury that they thought Allison was the defendant's witness instead of the state's witness.

It should be noted that in the motion for new trial no

objection was taken to the cross-examination of Allison by the state, which is now set out as the prejudicial error. We therefore have before us for consideration only the alleged error set out in the motion for a new trial, of admitting exhibit No. 7 in evidence. The trial court endeavored to cover this matter in instruction No. 10, which reads as follows: "The state was permitted to lay the foundation for impeachment of the witness Stanley E. Allison to show by another witness, Mildred J. Ballantyne, that Stanley E. Allison answered various questions in the office of Andrew D. Mapes, county attorney, on or about February 17, 1939, together with the answers he gave to such questions. This testimony was admitted solely because it may or may not affect the credibility of the testimony of Stanley E. Allison, and it must not be considered by you for any other purpose." This instruction very properly limited the purpose of exhibit No. 7 solely to its effect on the credibility of Allison. In the oral examination of Allison, all of the important facts of exhibit No. 7 had only been placed before the jury, and the exhibit itself added nothing to that.

The trial court gave a very complete instruction to the jury on the credibility of witnesses, showing that the weight to be given to the testimony of each of them was a question for the jury to decide, and detailed at considerable length the elements they were to consider in giving weight to the evidence of any particular witness, and no instruction was tendered by the plaintiff in error in regard to the admission of exhibit No. 7.

In the prosecution of a criminal case, the county attorney sometimes finds that a few of the witnesses are not inclined to tell the whole truth, and it has become quite customary, upon his first appearance in the office of the county attorney, to take a signed statement of the circumstances as he then gives them, to the end that the prosecuting attorney can present to the jury all the facts. At the trial, which is sometimes after a lapse of months, if one of the witnesses fails to testify to the facts as originally given, it is quite proper to refresh his recollection from the written state-

ment which was taken, usually in the presence of a witness.

It is argued at some length that the county attorney was not taken by surprise by Allison's evidence, which was entirely contrary to what he had given in his signed statement. It does not seem necessary that counsel must always arise in open court during the examination of a witness and state that he has been taken by surprise by a statement just made by a witness which is contrary to a written statement which the attorney holds in his hand. By proper interrogatories the counsel has shown that the witness is going back on a written statement which he had given, which in itself proves surprise, as the court stated in the case at bar.

Several references have been made to a cross-examination of the witness Allison. Technically, this was not a cross-examination, but it was a direct examination of his own witness, who had testified to a different state of facts than he had given in his written statement. In this case the defendant's counsel did not make the proper and necessary objection, or lay the required foundation for a reversal of the case on that issue.

In 3 Wigmore, Evidence (3d ed.) the discussion of the impeachment of one's own witness runs from page 383 to page 443. It is impossible to even summarize this exhaustive discussion, with the many authorities set out. He shows that the primitive idea that a party is morally bound by the statements of his own witnesses no longer finds any support. The witnesses who must be called in a criminal case as eyewitnesses of the alleged offense cannot be selected beforehand by the prosecutor, but are determined simply by the circumstances of who happened to be present at that time and place. It is the duty of the prosecutor to take such preliminary statements, examine into all the facts, weigh the character and standing of the witnesses, and if one of the witnesses, when the case comes to trial, unexpectedly changes his story, he is privileged to show the jury the facts which led him to call such witness to the stand.

This court has stated: "Where one has been misled or entrapped into calling a witness by reason of such witness,

previous to the trial, having made statements to the party, or his counsel, favorable to the party's contention, and at variance with the testimony given at the trial, and the party believed and relied upon such statements in calling the witness, and is surprised by the testimony on a material point, he may, in the discretion of the court, be permitted to show the contradictory statements made before the trial." *Penhansky v. Drake Realty Construction Co.,* 109 Neb. 120, 190 N. W. 265. See, also, *Stanley v. Sun Ins. Office,* 126 Neb. 205, 252 N. W. 807; *Mason v. Reynolds,* 135 Neb. 773, 284 N. W. 257; 74 A. L. R. 1042, Ann.

In the homicide case of *Hickory v. United States,* 151 U. S. 303, 14 S. Ct. 334, it is stated that a party taken by surprise by the evidence of his own witness may interrogate him as to inconsistent statements previously made by him for the purpose of refreshing his recollection, or inducing him to correct his testimony. Proof of such contradictory statements was generally not admissible at common law (*Melhuish v. Collier,* 15 Q. B. *878), but later, by statute in England and in many of the states, this has been modified so that a party may, in case the witness shall, in the opinion of the judge, prove adverse, show that he has made at other times statements inconsistent with his present testimony.

In conclusion, we have tried to make it clear that the impeaching statement, exhibit No. 7, taken in the attorney's office before several witnesses, is not *proof* of anything, as it is not substantive evidence. Its only purpose is to explain to the jury the reason why a hostile witness was called to the stand by the state. See *Sindelar v. Hord Grain Co.,* 116 Neb. 776, 219 N. W. 145; *Blochowitz v. Blochowitz,* 122 Neb. 385, 240 N. W. 586.

In the former opinion, we summarized the facts, and included this sentence: "The wheel here involved was taken to defendant's basement, where the tire was taken off, the serial number buffed out, and the wheel repainted." As it does not appear that these facts are found in the evidence, except in exhibit No. 7, which is not substantive evidence, this sentence in the former opinion is withdrawn.

With this change, the judgment and sentence as set out in our former opinion, 138 Neb. 708, 294 N. W. 851, are

AFFIRMED.

SIMMONS, C. J., dissenting.

Allison was the state's witness. Twice during the progress of the cross-examination of Allison by the county attorney, defendant objected on the ground that the state was impeaching its own witness. It is quite apparent that under the repeated holdings of this court the state had the right, upon a proper foundation being shown, to impeach its own witness, and that the ruling of the court on the objection as made was correct. Later the state offered the signed statement of Allison. The objection then made was that it was "incompetent, irrelevant, and immaterial." This the court overruled, and the exhibit was received for the sole purpose of impeaching the witness.

This court, in its first opinion, considered the statement to be substantive evidence, and it does not seem improbable that the jury did likewise and that the verdict of guilty rests thereon. It is likewise apparent that, had proper objection been made and the evidence admitted over that objection, it would have been reversible error. That appears to be the position of the majority. See *Masourides v. State,* 86 Neb. 105, 125 N. W. 132; *Erdman v. State,* 90 Neb. 642, 134 N. W. 258. However, the majority opinion reaches the conclusion that "the defendant's counsel did not make the proper and necessary objection, or lay the required foundation for a reversal of the case." In the light of that conclusion it is obvious that whether or not the county attorney was surprised and the evidence thereby admissible is not material to a decision here.

What foundation was necessary? The majority appear to hold that a sufficient foundation of surprise is shown when a witness by his answers discloses that he "is going back on a written statement which he has given." That, however, is not sufficient.

The rule appears to be that, "In addition to the requirement that a witness give material prejudicial testimony, in

order that the party calling him may be allowed to impeach him by proof of prior inconsistent statements it must also appear that such a party was taken by surprise * * * and that such surprise was *bona fide* and founded upon an honest belief that the witness' testimony would be different from that given." 3 Wharton, Criminal Evidence (11th ed.) 2280. See, also, 3 Wigmore, Evidence (3d ed.) 397; Underhill, Criminal Evidence (4th ed.) 854; 70 C. J. 1032; *Blochowitz v. Blochowitz*, 122 Neb. 385, 240 N. W. 586.

Was the county attorney "actually surprised" by the testimony of the witness Allison? The county attorney did not claim that he was surprised. The record does not show surprise, but clearly shows lack of surprise. The events here considered happened upon the second trial of the defendant. The statement was given to the officers before the first trial. Allison was subpœnaed by the state as a witness at the first trial. When asked if he testified, he answered, "No; *they wouldn't let me testify; they held me off the stand. I don't know why.*" This testimony was stricken on motion of the state as not responsive. Allison was arrested shortly after the first trial. He was asked, "You had refused to testify to anything derogatory to the defendant had you?" and he answered, "I knew it was all false." This last answer was stricken from the record by the court on its own motion. When called as a witness by the state, Allison, after preliminary questions, testified that he was not at defendant's store on the night in question. Without further direct examination about the alleged crime, the state started to cross-examine him regarding the statement he had previously given. Defendant's counsel objected that the state was impeaching its own witness. The county attorney said nothing and made no showing of surprise. The court said: "He is taken by surprise. He can impeach his own witness. Proceed."

This is not a showing of surprise, either by the county attorney or by the incidents of the trial, that meets the requirements of the rule announced by the cited texts and the supporting cases. The incidents of the trial negative surprise.

It will thus be seen that, upon the mere denial of Allison that he had been in the store that day, the state proved not only his previous statement that he had been in the store, but also put in all the questions and answers as to what Allison had said was his part and the part of Cornell in handling the property, and admissions alleged to have been made by Cornell. The state then called the stenographer who had transcribed the statement, had her identify it, and put it in evidence. Thus, the entire statement was twice put in evidence as impeaching Allison's denial that he was in the store.

It is not our task to determine the guilt or innocence of the accused. That, under proper procedure, is the duty of the jury. One of our tasks is to announce and properly apply rules of law. The rule permitting the impeachment of one's own witness is neither properly announced nor properly applied by the majority in this case.