EARL S. TEXTER, PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.

102 N. W. 2d 655

Filed May 6, 1960.   No. 34775.

*John McArthur,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer L. Hamilton,* for defendant in error.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Earl S. Texter was convicted by a jury in the district court for Lancaster County of the crime of statutory rape. He thereupon filed a motion in that court asking it to vacate and set aside the jury's verdict, for reasons therein set forth, and to grant him a new trial. This motion the trial court overruled, after which it sentenced defendant to serve 10 years in the Nebraska State Penitentiary. This error proceeding was taken by the defendant to this court for the purpose of having us review the record of his conviction in relation to certain errors which he claims occurred in the court below and which errors he claims prevented him from having a fair and impartial trial. For convenience we shall herein refer to the plaintiff in error as either defendant or Tex.

The first contention made by the defendant is that the trial court erred by receiving in evidence, over his objections, hearsay evidence that he committed the crime with which he had been charged. The evidence referred to was given by detective Lowell Sellmeyer of the Lincoln police force and relates to what he was told by Olga H. Verry, mother of the prosecutrix, shortly after the crime occurred of which defendant was convicted. If this evidence had been offered by the State and received as substantive proof of the crime charged

it would fall within the cases cited by the plaintiff in error and be controlled thereby. See, Langdon v. Loup River Public Power Dist., 142 Neb. 859, 8 N. W. 2d 201; Triplett v. Western Public Service Co., 129 Neb. 799, 263 N. W. 229; Village of Ponca v. Crawford, 18 Neb. 551, 26 N. W. 365; Clopper v. Poland, 12 Neb. 69, 10 N. W. 538. But such is not the case. Olga H. Verry was called by the State and testified in detail as to just what happened on the night of July 22, 1959, when the crime with which the defendant was charged occurred. On cross-examination she changed her testimony in at least two material aspects. Thereafter, on redirect examination by the State, she maintained the testimony she had given on cross-examination was correct. The State then asked the proper questions for impeaching her on these material changes. Subsequently police officer Sellmeyer was put on the stand by the State and he testified to what this witness had told him the night of July 22-23, 1959, in regard to these matters and the trial court properly limited the jury's consideration of his testimony in regard thereto by its instruction No. 11. We held in Penhansky v. Drake Realty Construction Co., 109 Neb. 120, 190 N. W. 265: "Where one has been misled or entrapped into calling a witness by reason of such witness, previous to the trial, having made statements to the party, or his counsel, favorable to the party's contention, and at variance with the testimony given at the trial, and the party believed and relied upon such statements in calling the witness, and is surprised by the testimony on a material point, he may, in the discretion of the court, be permitted to show the contradictory statements made before the trial." And, as stated in Mason v. Reynolds, 135 Neb. 773, 284 N. W. 257: "To this holding we may add the reasons therefor: Counsel should be allowed to show such previous inconsistent statements of his own witness, for the reason of refreshing his memory, probing his conscience, and, if for no other reason, that

he may show the court and jury the circumstance which induced him to call and vouch for such a witness." See, also, Cornell v. State, 139 Neb. 878, 299 N. W. 231; Svehla v. State, 168 Neb. 553, 96 N. W. 2d 649. As stated in Schluter v. State, 153 Neb. 317, 44 N. W. 2d 588: "Evidence tending to show that a person made, before becoming a witness in a case, statements inconsistent with and contrary to his testimony as a witness on the trial thereof, does not dispose of his testimony as to the matters involved. It constitutes a part of the evidence in the case to be weighed and considered in the determination thereof. Proof of contradictory statements of a witness is received not as evidence of the facts declared, unless made against interest by one who is a party to the record, but for the purpose only of aiding the jury in estimating the credibility of the witness. This is clearly stated in Zimmerman v. Kearney County Bank, 59 Neb. 23, 80 N. W. 54: 'A witness may be impeached by showing that he made statements out of court contrary to those made in court in regard to some matters relevant to the issue. * * * Such declarations are not substantive evidence of the fact declared, unless made against interest by one who is a party to the record. * * * Such declarations are received to aid the court or the jury in estimating the character and credibility of the witness.'" And the foregoing would have equal application when a witness called changes her testimony as to material matters on cross-examination.

By its instruction No. 11 the trial court instructed the jury as follows in this regard: "The State was permitted to lay the foundation for the impeachment of Mrs. Olga Verry to show that this witness answered various questions to a police officer inconsistent with and contrary to her testimony as a witness on the trial hereof. Proof of contradictory statements of a witness, if such you find, is received not as evidence of the facts declared in such alleged contradictory statement

or statements, but for the purpose only of aiding the jury in estimating the credibility of the witness." This instruction properly limited the purpose of this evidence. See, Cornell v. State, *supra;* Schluter v. State, *supra.* We find no merit in this contention.

Defendant complains of the fact that he was, on cross-examination, required to answer the following question although he made objection to doing so: "Q- Did you know that Delores (Gaub) told the police that you did have intercourse there in the bedroom at that time?" The "time" related to the night of July 22-23, 1959. We have always adhered to the principle that: "Where a defendant in a criminal case offers himself as a witness on his own behalf, he is subject to the same rules of cross-examination as other witnesses, and it is the duty of the court to keep the cross-examination within the law." Elliott v. State, 34 Neb. 48, 51 N. W. 315. See, also, Leo v. State, 63 Neb. 723, 89 N. W. 303; Dunlap v. State, 116 Neb. 313, 217 N. W. 89; Wehenkel v. State, 116 Neb. 493, 218 N. W. 137; Crawford v. State, 116 Neb. 629, 218 N. W. 421.

As stated in Kleinschmidt v. State, 116 Neb. 577, 218 N. W. 384: "Unless it can be said, with reasonable certainty, that irrelevant and incompetent evidence received upon the trial of a criminal case is not so prejudicial as to deprive the defendant of a fair trial, a conviction secured by such evidence will be set aside."

Delores Gaub did not so testify nor did the State produce any police officer who testified to that effect. In view thereof we will assume, for the purpose of discussion only, that it was error to require the defendant to answer the question, which he did in the negative.

However, as stated in Jurgensen v. State, 135 Neb. 537, 283 N. W. 228: "Error may creep into the proceedings in criminal prosecutions in spite of impartiality, care, learning and vigilance of the trial judge. It is only error prejudicial to a right of accused or the denial of a substantial legal right that requires the re-

versal of his conviction. Harmless error does not require a second trial. The law recognizes the possibility of harmless imperfections in the proceedings of judicial tribunals and does not defeat itself by exacting absolute perfection in bringing malefactors to justice." See, also, § 29-2308, R. R. S. 1943. Evidence, which was received without objection, shows that defendant, who at all times herein material was a married man, spent many nights in the apartment occupied by Delores Gaub, whom he was dating, and her mother Olga H. Verry; that the apartment consisted of a bedroom, living room, dining room, kitchen, and bath; that he had spent one night in a bedroom with Delores Gaub in the apartment of the latter's brother Gordon Gaub, although not with the brother's knowledge or consent; that on many occasions defendant and Delores came out of her bedroom together; that on the night in question they were in her bedroom together; and that on August 22, 1959, the police caught defendant and Delores together in bed in a hotel in Lincoln, for which charges were filed against them which are still pending. Under this situation we do not think that having to answer this question could have been prejudicial to the defendant.

Defendant contends it was prejudicial error for the State to permanently remove Dennis Gaub from the state and to fail to produce Dennis and policewoman Hulda Roper of the Lincoln police force as witnesses. Dennis Gaub was a 10-year-old brother of the prosecutrix. Their parents had been divorced in 1956. Thereafter, in October 1957, the father Christoph J. Gaub, who then lived in Sidney, Montana, was given the custody of the parents' three youngest children, which included Dennis and the prosecutrix, the latter being 7 years of age on July 22, 1959. On July 11, 1959, the daughter Delores and her mother went to Sidney, Montana, in Delores' car to get the three youngest children. They returned with the children on July 13, 1959, with the intention of having the children visit with them and

the children's brother Gordon until school started in September. However, after the incident of July 22, 1959, Gordon Gaub, under the auspices of the Red Cross, returned the children to the custody of their father at Sidney, Montana. This he did on July 26, 1959. Thus it becomes evident the State did not remove any of these children, which would include Dennis.

It is the duty of the prosecution to produce all evidence tending to establish the guilt or innocence of the accused. Fugate v. State, 169 Neb. 434, 99 N. W. 2d 874. And there may be situations where a failure to do so can result in error requiring reversal. See, Klawitter v. State, 76 Neb. 49, 107 N. W. 121; Peery v. State, 163 Neb. 628, 80 N. W. 2d 699. However, it is not necessary for the State to call every witness whom it knows may have some knowledge relating to the crime charged if such knowledge is not material to the question of the accused's guilt or innocence.

On the night of July 22, 1959, Dennis and his sister, the prosecutrix, stayed at the apartment of their mother and sister located at 219 South Fifteenth Street in the city of Lincoln. The mother put the children to bed in the living room, Dennis sleeping on a rollaway bed and prosecutrix on a couch, which is also referred to in the record as a sofa or daveno. The rollaway bed and couch were about 2 or 3 feet apart. The record shows that at all times herein material Dennis was asleep. Under these circumstances we do not see why the State should have been required to call him nor do we think it was obligated to do so. As to policewoman Hulda Roper, the evidence shows she talked to the mother, Delores, Dennis, and the prosecutrix the morning of July 23, 1959. What these people told her would not be admissible except possibly the complaints of the prosecutrix as to her being molested, if she made any such complaint to her. But the latter would only be corroborative of what other witnesses have testified to. Therefore, we do not think it was necessary for the State

to call her. We find defendant's contention in this regard to be without merit.

Finally, the defendant contends the evidence adduced is not sufficient to sustain the verdict because the corroboration is inadequate. As a witness defendant unequivocally denied the commission of the crime with which he was charged. We said in Klawitter v. State, *supra,* that: "The rule is settled in this state that in cases of rape unless the testimony of the prosecutrix is corroborated on material points, where the accused testifies as a witness on his own behalf and denies the charge, her testimony alone is not sufficient to warrant a conviction." However, we therein went on to say: "But this rule is qualified by the other principle that it is not essential that she be corroborated by the testimony of other witnesses as to the particular act constituting the offense. It is sufficient if she be corroborated as to material facts and circumstances which tend to support her testimony and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn." See, also, Haynes v. State, 137 Neb. 69, 288 N. W. 382; Cascio v. State, 147 Neb. 1075, 25 N. W. 2d 897; Prokop v. State, 148 Neb. 582, 28 N. W. 2d 200, 172 A. L. R. 916; Sherrick v. State, 157 Neb. 623, 61 N. W. 2d 358; Peery v. State, *supra.* In Krug v. State, 116 Neb. 185, 216 N. W. 664, it was said: "In prosecution for rape, the prosecutrix may testify in chief, if within a reasonable time under all the circumstances after the act was committed she made complaint to another, to the fact and nature of the complaint, but not as to its details; and that other may likewise testify in chief to such fact and nature of the complaint, but not as to its details. Such testimony, together with all other facts and circumstances in evidence, may be considered by the jury in corroboration of the testimony of the prosecutrix as to the main fact in issue."

There are discrepancies, inconsistencies, and conflicts in the evidence adduced but these are matters which it

was the duty of the jurors to consider and weigh in arriving at their verdict for the credibility of witnesses and the weight of the evidence are for the jury to determine in a criminal case. Sedlacek v. State, 166 Neb. 736, 90 N. W. 2d 340; Small v. State, 165 Neb. 381, 85 N. W. 2d 712. As stated in Small v. State, *supra*: "This court in a criminal action will not interfere with the verdict of guilty based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." See, also, Sherrick v. State, *supra*.

The crime of which defendant was found guilty occurred on Wednesday, July 22, 1959. In order to get a better picture of the situation out of which the charges made against defendant arose a background of his relation to the Gaub family is necessary. The Gaub family was originally from Sidney, Montana. It consisted of the mother, now Olga H. Verry; the father, Christoph J. Gaub; a daughter, Delores; a son, Gordon; a daughter, Dianne; a son, Dennis; and a daughter, Donna Lou, the prosecutrix. On July 22, 1959, these children were respectively 20, 19, 13, 10, and 7 years of age. The Gaubs were divorced in 1956 in what is referred to as a bitterly contested action. Thereafter, in October 1957, the father was awarded the custody of Dianne, Dennis, and Donna Lou. Delores came to Lincoln in May 1958. She was then and still is single. She became acquainted with defendant and, in either February or March 1959, they started going together. The close intimacy of that relationship has already been referred to. Gordon, who was married, also came to Lincoln to live, being assigned to duty at the Lincoln Air Force Base. In March 1959, the mother came to Lincoln. At first she and Delores lived with Gordon and his family in the latter's apartment. Apparently after the incident that occurred there in which defendant and Delores were involved, hereinbefore referred to, the mother and Delores moved out of Gordon's

apartment and into the one they occupied at 219 South Fifteenth Street on July 22, 1959. On July 11, 1959, Delores and her mother, in the former's car, drove to Sidney, Montana, to get Dianne, Dennis, and Donna Lou, arrangements having been made for them to visit in Lincoln until school opened in September. They arrived in Lincoln on July 13, and thereafter the three children stayed with either Gordon and his family in their apartment or with the mother and Delores in their apartment, or with both.

Defendant originally came from Philadelphia, Pennsylvania. He had been in the Air Force since March 30, 1954, and, at all times herein material, was assigned to duty at the Lincoln Air Force Base, being a staff sergeant. He was married in 1956. However, he and his wife separated and she obtained a decree of divorce on April 15, 1959, which did not become final until October 15, 1959. He was 22 years of age on July 22, 1959.

The evidence adduced would fully support a jury's finding that on July 22, 1959, Dennis and Donna Lou had supper with their mother in her and Delores' apartment; that between 8:30 and 9 p.m., the mother put them to bed in the living room of her apartment in the manner hereinbefore described; that about 10 p.m., after the children had gone to sleep, the defendant came up to the apartment and he and the mother went into the kitchen and visited, they being very good friends; that shortly before 11 p.m., the mother left the apartment to get some beer, closing and locking the door as she left; that when she left the defendant, Dennis, and Donna Lou were the only persons in the apartment; that no one else came into the apartment or left it while the mother was gone; that while the mother was gone Donna Lou awakened and found defendant lying on top of her, she being on her back, and sexually molesting her; that defendant had his hands over her mouth and that when she tried to cry out he put a hand on her neck and asked her if she wanted to live; that when she

said she did he told her not to yell; that he had put her panties down around her ankles and had unbuckled his pants and put them down; that he continued to sexually molest her; that when the mother came back she knocked on the door; that defendant then got up off of her, pulled up his pants and buckled them, and then opened the door; that Donna Lou, although she was crying and continued to do so, did not complain to her mother about what had happened to her as long as defendant was in the apartment because of her fear of him in view of what he had said to her; that about 11:30 p.m., Delores returned from work, she having left the apartment for that purpose prior to 5 p.m.; that later, between 12 and 12:30 a.m., defendant left the apartment, which was on the third floor, to go back to the base; that Delores went down stairs with him; that after defendant left the apartment Donna Lou told her mother that "Tex," whom she had previously seen in the apartment and knew, had sexually molested her; that the mother then called to Delores and asked her to come back to the apartment; that Delores did so, and as she did defendant followed her; that when he got back to the apartment the mother confronted him with what Donna Lou had said, which charges he denied; that the mother then said they would have to take Donna Lou to the hospital to have her examined; and that defendant then called the Lincoln air base and left the apartment shortly thereafter. Defendant was later found by the Lincoln police in the Provost Marshall's office at the base.

After defendant left the apartment Delores called St. Elizabeth Hospital and made arrangements to have Donna Lou examined. The mother and Delores, in the latter's car, then took Donna Lou to the hospital where she was taken to the emergency room. Dr. Bernard Rudis, an intern at the hospital, examined Donna Lou about 1 o'clock a.m., on July 23, 1959. He testified, because of her age, he did a modified pelvic examination;

that he found her hymen had been lacerated; that a tear extended about one or two millimeters into the vaginal wall; that there was bleeding and a moderate amount of mucoid material which was bloody; and that the child was quite disturbed. It was his opinion the child had been molested. It should be stated that the panties Donna Lou wore that night and the bed sheet she slept on were both offered in evidence and both were badly stained from blood, particularly the crotch of the panties.

Two officers of the Lincoln police force were at the hospital when the mother, Delores, Dennis, and Donna Lou arrived there. The officers were there on other business but when they became aware of the reason the Gaubs were there they asked them to come to the police station. As a result they all reported to police headquarters after Dr. Rudis had completed his examination. There each of them talked to Bobby W. Myers, a night lieutenant of the Lincoln police force. Lt. Myers testified Donna Lou made a complaint to him about what had happened to her, that is, that defendant had had intercourse with her. Donna Lou also testified to the fact that she told the man she talked to at the police station about what defendant had done to her.

While there is evidence to the contrary, especially that produced by defendant, we believe the evidence adduced by the State to be amply sufficient to furnish the necessary corroboration. In fact, it would be difficult to get a stronger case in the absence of eyewitnesses. For somewhat comparable situations when this court has held the evidence as to corroboration to be sufficient, see, Beer v. State, 129 Neb. 366, 261 N. W. 824; Robbins v. State, 106 Neb. 423, 184 N. W. 53; Kotouc v. State, 104 Neb. 580, 178 N. W. 174.

In view of what we have herein said and held, it is our opinion that the evidence is sufficient to sustain the jury's finding of guilt and that defendant had a fair trial. We therefore affirm the judgment of the trial court overruling defendant's motion for a new trial

and its judgment sentencing defendant to the Nebraska State Penitentiary.

AFFIRMED.