[No. 24759. *En Banc.* March 23, 1934.]

JOHN C. THORNTON *et al., Respondents,* v. JOHN N. ENEROTH *et al., Appellants.*[1]

[1]Reported in 30 P. (2d) 951.

*Floyd Foster* and *Whittemore & Truscott,* for appellants Eneroth.

*Roberts, Skeel & Holman* and *Frank Hunter,* for appellants Baker *et al.*

*O. R. Schumann* and *Don M. Tunstall,* for appellant Harrison.

*D. V. Morthland* and *Harry L. Olson,* for respondents.

HOLCOMB, J.—This action, instituted by John C. Thornton and wife and tried to the court and jury, is for damages resulting from personal injuries received

by Thornton in two distinct, but nevertheless closely related, automobile accidents. Challenges to the sufficiency of the evidence and motion for nonsuit, made at the conclusion of respondents' case, were denied. After the introduction of all the evidence, each of appellants renewed these challenges and motions, and in the alternative asked for a directed verdict, all of which were denied. The jury returned a verdict for three thousand dollars. Thereafter, motions by appellants severally for judgment notwithstanding the verdict, and by respondents for a new trial, were duly presented, resulting in the court's granting a new trial to respondents upon the ground that the verdict was wholly inadequate, appearing to have been given under influence of passion or prejudice.

Appellants assign as error: First, the court's denial of their challenges to the sufficiency of the evidence; second, the court's denial of the motions to dismiss or, in the alternative, to direct a verdict for them at the close of all the evidence; third, the court's denial of their motions for judgment notwithstanding the verdict; and fourth, the court's granting respondents' motion for a new trial.

This case, involving as it does, a series of five swiftly successive automobile collisions, may be best understood by a chronological statement of the facts. On December 17, 1931, shortly after four o'clock in the afternoon, appellant Eneroth, a man sixty-nine years old, who had driven an automobile for fourteen years, left Yakima in his car for his home near the town of Selah, a few miles to the north. It was raining, but because of the low temperature the rain froze almost as soon as it fell upon outside surfaces. At the city limits of Yakima, Eneroth stopped off the pavement and removed the ice which had formed on his windshield, after which he proceeded.

4

The highway at that point was a concrete state highway twenty feet wide, with a dirt and gravel shoulder on each side some seven or eight feet wide, and beyond this was a ditch four or five feet deep. Snow had been removed from the pavement and piled about two feet high on these shoulders, except that there were bare strips of a foot and a half or two feet in width from the pavement.

Upon leaving the Yakima city limits, Eneroth had his lights on, as it was growing dark, and the windshield swipe operating. However, ice continued to form on the windshield, because of which the swipe not only failed to operate effectively and, therefore, was turned off, but the driver's vision became more and more obscured; until finally, after having traveled about three-quarters of a mile, when it became impossible for him to see the road ahead, he stopped his car upon the pavement on his own side of the road. He then placed his hands on the inside of the windshield in order to melt the ice on the outside, and had been thus engaged for some eight or ten seconds when the rear of his car was bumped by a motor truck driven by one Spencer, who was also traveling north. Almost immediately thereafter, a car driven by respondent Thornton, and traveling in the same direction as those mentioned, ran into the rear of the Spencer car. The impact from this collision was quite severe, because it broke and pushed back the radiator of the Thornton car, causing the water therein to escape.

Spencer immediately moved his car some thirty or forty feet ahead of the Eneroth car, while Thornton engaged Eneroth, who was still sitting in his car, in a discussion about the collisions, and particularly as to the damage done to the Thornton car. Thornton, after Spencer had agreed to tow his car to a nearby service station, went back to his car to ascertain the damage

done. He started the motor and, after finding that it would run, turned it off and stepped out of the car.

Just as he alighted, another automobile, driven by appellant Baker, who was also traveling north, and who at the time was in the employ of Sears, Roebuck & Company, another appellant, ran into the rear of Thornton's car, the impact throwing the car door against Thornton, knocking him down, but not seriously injuring him. That impact caused the Baker car to turn around on the slippery pavement, and it came to rest to the left of the Eneroth car, while the front of the Thornton car was forced into the snow bank to the right. A small boy, who lived in the neighborhood, happened to be so situated that he was caught and held by a wheel of the Thornton car. Thornton, upon arising from the pavement, assisted in extricating the boy, and then, although noticing another car coming from the south, went around behind his own car to observe any additional damage which he might have suffered; and at this point, which was some minutes from the time the Thornton car collided with the Spencer car, another car, driven by appellant Mrs. Halverson (then Miss Harrison), collided with the rear of the Thornton car, catching Thornton in such a way as to break the bones of his leg. He instantly dropped to the pavement; and while he was in a sitting position, another car, driven by one Doris Brown, impacted the Halverson car from the rear, and again Thornton was caught between two cars, and thereby suffered additional and severe injuries to his chest and ribs.

It is for the damages resulting from the impact of the automobile driven by Mrs. Halverson and Mrs. Brown that Thornton and wife seek redress against all of appellants.

It is contended that the trial court erred in granting a new trial upon the ground of inadequacy of the verdict, first, because the verdict exceeds the special damages; and, second, because respondents failed to establish any case for the jury.

Under our statutes, a new trial may be granted for "inadequate damages appearing to have been given under the influence of passion or prejudice." We have, on numerous occasions, held that this involved a discretionary power on the part of the trial court, and that the granting of a new trial on this ground would not be set aside unless there was an abuse of discretion. Merely showing that the verdict is in excess of the special damages alleged does not, of itself, establish arbitrary action. There was evidence not only tending to support special, but also general, damages. Hence, we can not say, as a matter of law, that the trial court was not justified, in the exercise of a just discretion under all the circumstances, in the conclusion that the damages awarded were inadequate and appeared to have been determined by the jury under the influence of passion or prejudice. Especially is this true when the abstract of the record entirely omits the medical testimony as to the extent and duration of the disability suffered.

The objection to the granting of the motion for new trial because of the insufficiency of the evidence to support any case for respondents, brings us to the point urged by them that, in this appeal, we may not consider the question of the sufficiency of the evidence to support the verdict, and that we may only determine whether or not the lower court was guilty of an abuse of discretion in granting their motion for a new trial. This question is settled contrary to respondents' contention by the cases of *Adams v. Anderson & Middleton Lumber Co.*, 124 Wash. 356, 214 Pac. 835, and 127

Wash. 678, 221 Pac. 993; and *Humphreys v. Seattle,* 152 Wash. 339, 277 Pac. 834, 281 Pac. 994.

█ Supporting the charges of negligence as to Eneroth, there was evidence that, after once clearing his windshield of ice, he traveled three-quarters of a mile, and over that distance the ice again gradually accumulated until he could not see the road at all. In fact, he proceeded even after the windshield swipe failed to remove the rain as it solidified on the window, for which reason he turned it off. True, he stopped when he could no longer see, but it was for the jury to say from all facts and circumstances whether this was not too late, and whether the car was so operated and so stopped upon the highway as to constitute negligence.

In *Schwalen v. Fuller & Co.,* 107 Wash. 476, 182 Pac. 592, 187 Pac. 367, 10 A. L. R. 296, we held that the jury may find negligence in the driving of an automobile if the windshield is so covered with rain as to obstruct the driver's view of the road ahead, and may also find that such negligence is the proximate cause of an injury.

In *Keller v. Breneman,* 153 Wash. 208, 279 Pac. 588, 67 A. L. R. 92, the plaintiff's truck stalled on a paved highway, due to its supply of gasoline having become exhausted. Defendant, driving his automobile, ran into the truck and also the plaintiff, who had left his truck and was at the moment walking along the highway. In affirming a judgment notwithstanding the verdict, we said:

"It is not meant to be said, of course, that the stalling of an automobile on the highway for every cause is evidence of negligence on the part of its operator. A motor vehicle is a complicated piece of mechanism, and some part of it may give way and cause it to stall, no matter what degree of care the operator may have exercised to keep it in proper condition. But the

operator must exercise a reasonable degree of care to keep it in proper condition, and it is a want of such care to permit it to stall for want of a sufficient supply of gasoline.''

In considering the elements of negligence, there is no perceptible difference in continuing to drive a car until it becomes stalled by running out of gasoline, from proceeding until the vision is completely obscured by the gradual accumulation of freezing rain on the windshield and thereby becoming stalled. If the first may constitute negligence, certainly the latter may, because the driver's consciousness of the limit of visibility is always present. Counsel concedes that it would be negligence to proceed after one cannot see; and it may also be negligence to proceed until one's vision has been gradually, but completely, cut off, and then stopping on the highway, in the path of other vehicles necessarily traveling on that same side.

With the exception of that of Eneroth, all of the motor vehicles involved, including Thornton's, were operated at such a speed and in such a manner as to collide with a vehicle in front. Hence, it is claimed by appellants that, if one was negligent, all were, and that therefore Thornton cannot recover. This argument, however, disregards respondents' testimony that a motor vehicle was coming from the opposite direction, which, with the position of the Eneroth and Spencer cars, made it impossible for Thornton to pass; and further, that the testimony of speed, the manner of handling the cars, and the conditions and circumstances in each instance vary. It might, therefore, be possible for some of the drivers to have so operated their cars as to have a collision and not be deemed guilty of negligence, while others might be chargeable therewith.

We cannot say, as a matter of law, that, under the circumstances, the parties, excepting Eneroth, were equally innocent of, or equally chargeable with, negligence. For instance, appellant Mrs. Halverson argues that one of the causes of her collision was the poor visibility caused by the accumulation of ice on the windshield of her car. Driving under these conditions may, as we have indicated, constitute negligence, but whether or not it did in this instance, is a question for the jury.

As to Baker and his employer, Sears, Roebuck & Company, no liability was established. Not only did respondent's attorney state in the course of the trial that they were not asking for any property damages whatever, but in speaking of the Baker car collision, respondent's own testimony on cross-examination was as follows:

"Q. Were you hurt? A. Not seriously, no. Q. Are you suing for any damages inflicted by that accident? A. No. . . . A. I don't feel I was injured then. Q. You weren't injured then? A. No, kind of dazed."

In fact, the only thing Baker's collision did was to force respondents' car further off the pavement and hence more out of the line of travel. Therefore, as far as appellants Baker and Sears, Roebuck & Company are concerned, their challenge to the sufficiency of the evidence should be sustained.

The next question is as to whether or not Eneroth and Mrs. Halverson, if guilty of negligence, are each chargeable with the total damages suffered from the two injuries, for certainly there were two separate and distinct injuries. It will be recalled that Mrs. Halverson's collision directly inflicted the leg injury and Mrs. Brown's collision directly inflicted the torso injury.

It was for the jury to determine whether Eneroth was negligent, and also whether his negligence started a chain of events which was not completed before the final collision of the Brown car. If these questions are answered in the affirmative, it may be found that the proximate cause of both injuries was the negligence of Eneroth (*Watkins v. Interstate Coach Co.*, 145 Wash. 221, 259 Pac. 393). Even though Mrs. Halverson and Mrs. Brown may have been negligent, that would not, as a matter of law, relieve him of liability, for it is well settled that, when an injury is the result of the combined negligence or wrongful act of a third person with that of the first negligent actor, that defendant is liable when the injury would not have happened except for his negligence. *Eskildsen v. Seattle*, 29 Wash. 583, 70 Pac. 64; *Hellan v. Supply Laundry Co.*, 94 Wash. 683, 163 Pac. 9; *Lindsey v. Elkins*, 154 Wash. 588, 283 Pac. 447; *Young v. Smith*, 166 Wash. 411, 7 P. (2d) 1.

Going a step farther, it is equally well established that, where the negligence of two or more persons, even though acting independently of each other, united in causing an injury, they are joint tort-feasors, and are jointly and severally liable for the resulting damages. *Hellan v. Supply Laundry Co., supra; Young v. Dille*, 127 Wash. 398, 220 Pac. 782; *Lindsey v. Elkins, supra.*

Applying the principles of law announced, we conclude that Eneroth and Mrs. Halverson may be found responsible as joint tort-feasors for both injuries. Nor is this out of harmony with the case of *Young v. Dille, supra,* where it was held that a second tort-feasor was not liable for damages occurring before his own acts of negligence. Whether Mrs. Halverson was negligent and whether her negligence was a proximate cause of the later chest injury, directly caused by Mrs. Brown, are questions for the jury, especially when

the facts show that Mrs. Halverson's collision not only broke respondent's leg, but placed him in such a position that the later collision resulted in the chest injury. And while Mrs. Brown may have been negligent, still Mrs. Halverson cannot escape liability for the second injury if her negligence was found to have been the proximate cause thereof.

We have not lost sight of the fact that Eneroth may not have been present when the actual damage occurred, but that alone would not negative the fact that he was the moving cause of what happened after he did leave. *Graves v. Flesher,* 176 Wash. 130, 28 P. (2d) 297.

Mrs. Brown was not made a party, nor was it necessary that she be a party in order to hold Mrs. Halverson liable as a joint tort-feasor with her. *Graves v. Flesher, supra.*

Nor can we say, as a matter of law, that Thornton was guilty of contributory negligence. It is very evident that there was considerable confusion, augmented, it would seem, by most unusual weather conditions and semi-darkness. All this may have contributed in influencing Thornton's actions. Furthermore, the Eneroth car, and later the Baker car, were well over to the center of the pavement, while the Thornton car was well to the right side. Whether a reasonably prudent person would do as Thornton did, was, under the issues, a question for the jury. *Watkins v. Interstate Coach Co., supra,* and cases therein cited.

We conclude that the trial court should have dismissed the action against appellants Baker and Sears, Roebuck & Company, but otherwise the order granting a new trial is affirmed.

Appellants Baker and Sears, Roebuck & Company shall have appeal costs.

MAIN, STEINERT, BLAKE, GERAGHTY, and MITCHELL, JJ., concur.

MILLARD, J. (concurring)—I concur in the result.

*Keller v. Breneman,* 153 Wash. 208, 279 Pac. 588, 67 A. L. R. 92, is not in point. The courts uniformly hold that the operator of an automobile must exercise a reasonable degree of care to keep his machine in proper condition. However, we did not hold in *Keller v. Breneman, supra,* that "it is a want of such care to permit it to stall for want of a sufficient supply of gasoline." We said in *Chapin v. Stickel,* 173 Wash. 174, 22 P. (2d) 290, that the language in the case cited was not necessary to the decision. Dicta should not be cited and quoted as sustaining authority.

BEALS, C. J. (dissenting)—In my opinion, the evidence clearly shows that Mr. Thornton was guilty of negligence which materially contributed to his injuries, and that for this reason he is not entitled to recover judgment against any of the appellants.

After assisting in extricating the boy from under one of the front wheels of his car, Mr. Thornton was standing on the side of the road, off the pavement, in a perfectly safe place. He testified that, prior to stepping back on to the pavement to examine his car, he was aware of approaching traffic, stating, "I looked up to see if any cars was coming and I noticed these lights coming." He further testified that he did not estimate the speed of the approaching cars, nor how far away they were, but that they appeared to be coming rather rapidly.

In the face of this situation, Mr. Thornton walked out on to the pavement and placed himself in a position of peril. Under all the circumstances, of which

Mr. Thornton was fully advised, the dangerous conditions having been clearly demonstrated to him by what had already happened, in my opinion Mr. Thornton, in stepping out on to the pavement in the face of oncoming traffic, should be held, as matter of law, to have been guilty of contributory negligence.

I accordingly dissent from the conclusion reached by the majority.

TOLMAN, J., dissents.