No. 14,553.

ALDEN ET AL. *v.* WATSON.

No. 14,554.

ALDEN ET AL. *v.* BERG.

No. 14,555.

ALDEN ET AL. *v.* STENBORN.
(102 P. [2d] 479)

Decided April 22, 1940.

104

Messrs. BARTELS, BLOOD & BANCROFT, Mr. ARTHUR H. LAWS, for plaintiff in error Alden.

Messrs. BLOUNT, JANUARY & YEGGE, for plaintiff in error Ownbey.

Messrs. RINN & CONNELL, for defendants in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

IN the trial court plaintiffs in error were made co-defendants in three separate actions filed by Roy Watson, Frank A. Berg and Louis W. Stenborn respectively for damages for personal injuries resulting from a collision of certain automobiles. Except as to the injuries and damages claimed by the respective claimants, the allegations of the complaint were identical. By stipulation of counsel and order of court the three cases were consolidated for trial below. In each case verdict was returned in favor of the plaintiff and against the two defendants jointly. The recovery in the Watson case was $8,886.76; in the Berg case $6,356.65, and in the Stenborn case $2,833.34. Defendants' separate motions for new trial were overruled and, in accordance with the verdicts, judgments were entered against the defendants. By permission of this court, and pursuant to a stipulation to that effect, the plaintiffs in error here seek a review of these judgments on one abstract of record and separate briefs. Herein we shall refer to the parties as they appeared below or by name.

On the morning of January 3, 1938, plaintiffs were traveling northerly upon U. S. Highway No. 87, en route from Boulder to Longmont, where they were employed, in an automobile driven and owned by Kenneth Watson, the son of plaintiff Watson. Ahead of them on the highway defendant Alden was driving in the same direction toward what is known as the Gooding school, where he was the principal. At a point two or three miles north of Boulder junction the highway traverses a bridge which spans Boulder creek. Beyond this bridge to the north the road inclines upward without lateral curve on what is known as Sawdey hill upon a grade which rises from four to six per cent. On the morning in question from at least Boulder junction to the top of Sawdey

hill the cement surface of the highway was thinly coated with ice and sleet. The paved portion thereof in the area involved was eighteen feet wide and the average width of the gravelled shoulders on each side was 5.7 feet. A short distance beyond the Boulder creek bridge the speed of the Alden car was decreased and it was brought to a standstill. It is conceded that Alden gave no stop signal by hand or mechanical device. The Watson car then was between 50 and 75 feet to the rear of the Alden car. The driver of the Watson car testified that because of the approach from the opposite direction of the car driven by the other defendant Ownbey, southbound on the down hill west lane of the highway, he attempted to stop behind the Alden car on the northbound east lane where properly both had been traveling. However, when the brakes were applied the Watson car skidded ahead sidewise and its right rear fender and wheel struck the Alden car near the left rear corner thereof. As a result of this deflection the Watson car was projected crosswise on the pavement so that, when it came to rest, a portion of it extended into the west southbound lane. At this moment, according to the testimony of plaintiffs, the driver of their car, and of a disinterested witness who was in another auto behind them, the Ownbey car still was from 500 to 600 feet to the north and without any perceptible slackening of its speed—estimated as being from 50 to 70 miles per hour —or any attempt being made to swerve it from its course so as to avoid hitting the stationary Watson car, it continued down the westbound lane and struck the latter near the juncture of its rear door and fender on the left side. The impact threw the Watson car completely off the highway into the borrow pit on the east side of the road where it came to rest facing south, the opposite direction from that in which it had previously been traveling. The serious and disabling injuries received by the respective plaintiffs and for which recovery is sought resulted from this collision.

There was conflict in the evidence with respect to the location on the pavement of the Alden car at the time of its impact with the Watson car. Plaintiffs' witnesses place the Alden car as standing entirely on the pavement in the eastbound lane. Alden and other witnesses for defendants say that the right front and rear wheels were off the pavement. Alden testified his car had not come to a complete stop when it was struck by the Watson car, but admitted that within a comparatively short distance he had decreased its speed from twenty to nine or ten miles an hour with the intention of stopping to pick up a pedestrian and that he did stop about thirty feet beyond the point of impact. He further testified that before slowing down he looked to see if a car was approaching from behind but that he failed to see the Watson car. Possibly because of perturbation resulting from the first accident, he also failed to observe the Ownbey car until after its collision with the Watson car. The varying estimates of those who witnessed the two collisions or heard the sound caused thereby, fixed the time elapsing between them as being from a fraction of a second up to five seconds. Defendant Ownbey testified that his car was traveling about forty miles an hour when he reached the top of the hill, but that upon observing that the pavement was icy, which condition he said did not exist north of this point, he permitted his car to coast under compression of his motor, thereby reducing the speed to about twenty-five miles an hour. He said that when it appeared the Alden car was going to stop to pick up the pedestrian, as mentioned, he pulled over to the west shoulder of the road so that his two right wheels were thereon; that when he first observed the Watson car it was about twenty or twenty-five feet behind the Alden car, which at the time was six or seven feet in front of him; that almost instantaneously thereafter the first collision occurred and simultaneously the Watson car "whipped around" into his auto.

The complaint alleged that plaintiffs' injuries proximately resulted from the concurrent negligence of defendants and, consistent with the evidence adduced by plaintiffs, specifically charged defendant Alden with negligence in suddenly decreasing the speed of his car and stopping on the pavement without giving warning or signal; in leaving his car standing upon said portion of the highway; in failing to keep a reasonable lookout, and in negligently directing his attention toward the pedestrian he intended to "pick up." Defendant Ownbey's conduct was alleged to be negligent in that considering the slippery condition of the pavement and special hazards existing, his speed was excessive; that he did not have his car under reasonable control; did not keep a reasonable lookout for traffic and the Watson car, and negligently failed to stop his car or swerve its course so as to pass the Watson car on the west side. In effect, these allegations of negligence charged violations by defendants of the statutory provisions appearing in sections 189, 205, 206, 207 and 228, chapter 16, '35 C.S.A., relating to the operation of motor vehicles.

By separate answers defendants individually denied their negligence; alleged that the proximate cause of the plaintiffs' injuries was the negligence of the driver of the car in which they were riding; pleaded contributory and imputed negligence, unavoidable accident; and charged that there was a misjoinder of parties defendant.

Conceding that the verdicts must be taken as resolving all conflicts in the evidence in favor of the plaintiffs and, if sustained thereby, given a conclusive effect upon review, both defendants nevertheless contend the evidence was insufficient to so accomplish. In support of this contention they present the argument of so-called incontrovertible physical facts seemingly ever attendant in automobile collision cases. Beginning with the premise that the point of contact between the Ownbey and Watson cars was definitely fixed by the indentations on the left side of the latter, they argue therefrom that the

accident could not have happened in the manner de-scribed by plaintiffs' witnesses. To demonstrate, they employ a large scale plat of the highway at the point involved with three detached blocks of wood cut to the same scale representing the cars. They say that no mat-ter how these blocks are manipulated within the pave-ment area, it will be found there are no positions or combinations of positions described by and within the testimony and claims of the plaintiffs which can make it physically possible for the Watson and Ownbey cars to have collided except head on. The force of this argu-ment is weakened by the circumstance that the jury properly might have considered that to exercise reason-able care Ownbey should have observed the imminency of danger and stopped his car before reaching the point of collision, or that he was negligent in driving at a speed which precluded his so doing. Also should be taken into consideration the fact that by his own testi-mony Alden admitted violation of a statutory provision requiring a signal before stopping. Further, in the light of the numerous acts of negligence advanced, the jury in considering the verdicts even may have believed that the precise positions of the cars on the pavement after the first collision was of minor consequence. In *Denver Tramway Corporation v. Perisho,* 105 Colo. 280, 97 P. (2d) 422, we quoted from 20 Am. Jur., p. 1034, §1183, as follows: "So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irre-futable that no room is left for the entertainment, by reasonable minds, of any other." We are of the opinion that in the case at bar circumstances requiring the in-vocation of physical law neither clearly nor irrefutably appear.

■ Upon the theory that the acts of negligence al-leged against them were separate and independent and thus incapable of being combined to create a joint lia-

bility, the defendants next assert there was a misjoinder of defendants. They say that if either is liable it is in the capacity of an independent tort-feasor and then only for injuries flowing from the individual negligence of each. Corollary to this proposition it is further argued that the evidence fails to prove the joint liability of the two defendants. We think these contentions are without merit. The complaint unequivocally charged concurrent negligence and joint liability and was not vulnerable to objection on this ground. The general rule relating to liability in cases of this character is well set out in Blashfield's Automobile Law and Practice, vol. 5, permanent edition, p. 310, §3151, in the following language:

"Following the rules of negligence generally, if the combination of the negligent acts of two or more persons gives force and direction to events necessarily resulting in an occasion for paying damages, they are jointly and severally liable, and the injured person may recover from either or all.

"The mere fact that the negligence of one party slightly preceded that of the other in point of time, or that the accident would not have occurred but for the joint negligence of the other, or that the acts of negligence are independent of each other, will not defeat the joint and several liability arising among joint tort-feasors. Ordinarily, the comparative culpability of the two will not affect the joint and several liabilities of either. * * *

■ "Where the negligence of one person is concurrent with that of another and the concurring negligence of each produces a condition resulting in an injury to a third person, without negligence on his part, the third person may recover damages for the injury sustained by reason of the concurrent negligence of the two, without regard to whose negligence was the proximate cause of the injury." The rule is similarly expressed in 45 C.J., page 895, §476, and at page 924, et seq. §§487, 488. In all of these texts the rule is supported by a myriad

of authorities which we deem it unnecessary to cite in this opinion.

In 5 Am. Jur., page 832, §593, it is said: "The familiar rule that two or more tort-feasors who by concurrent acts of negligence which, although disconnected, yet in combination inflict an injury, are all jointly liable, and may at the election of the person injured be sued jointly, applies in cases involving the joint liability of owners or operators of two or more automobiles for injuries to a third person or damages to his property." The case of *Young v. Dille,* 127 Wash. 398, 220 Pac. 782, strongly relied upon by defendants as supporting their position is not in point here, since the complaint in that case, differently from the one before us, pleaded *separate* injuries due to *separate* negligent acts and reversal was ordered because of the lack of evidence to sustain the separate assessments of damage. That the Washington courts are in accord with the general rule clearly appears from the cases of *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 Pac. 9; *Graves v. Flesher,* 176 Wash. 130, 28 P. (2d) 297, and *Thornton v. Eneroth,* 177 Wash. 1, 30 P. (2d) 951. In *Morgan v. Gore,* 96 Colo. 508, 44 P. (2d) 918, under a factual situation somewhat similar to that of the case at bar, consistent with the general rule, we upheld a joint recovery against the drivers of two automobiles, concurring in causing plaintiff's damage. Owing to the great variety of cases in which the question is involved, it is not difficult to cite authorities that apparently support either side in almost any such controversy, but in the final analysis it will be found that in each instance and without great deviation from the general rule, the disposition largely depends upon the special attendant circumstances. Under proper instructions the jury here resolved the factual issues against the defendants and, as we perceive, no helpful purpose would be served by a further discussion of the cases cited by defendants on these questions.

██ Both defendants allege that the court erred in refusing to admit in evidence defendants' Exhibit 4. This exhibit consisted of a written statement of several pages concerning the accident, purportedly given by plaintiffs' witness Kenneth Watson—not a party to any of the actions—to an attorney who represented the carrier of liability and property damage insurance on the witness' car. Upon cross-examination, after expressing uncertainty on the subject, Watson finally denied that he had given a signed written statement to the attorney. When called as a witness by defendants this attorney testified that following the accident Watson had made a statement which was reduced to writing and signed by him, and which the witness identified as Exhibit 4. Defendants then offered the statement for the express purpose of impeaching Watson, whereupon plaintiffs objected upon the grounds that it was a confidential and privileged communication; also that no foundation had been laid for the impeachment of the witness by means of the statement. The court sustained the objection on the latter ground. Defendants assert the exhibit reflected on the truth and veracity of Watson in two respects: First, that it contradicted his testimony to the effect that he had neither made nor signed a written statement concerning the accident. Secondly, that a recital therein to the effect that plaintiffs Berg and Stenborn were paying Watson twenty-five cents per day to cover gas and oil consumption by his automobile, was contrary to Watson's testimony on direct and cross-examination wherein he testified as a substantive fact that there was no such agreement. It is obvious that as to the first contradiction claimed impeachment was accomplished by the testimony of the attorney witness to the effect that Watson *had* made and signed a written statement concerning the accident. The introduction of the exhibit would have accomplished nothing more. It is never proper to permit a party to prove that a witness for the adverse party made statements previous to the

trial at variance with his testimony on the witness stand, without first having called the attention of the witness to the particular contradictory statements, as well as the time and place it is claimed such were made, in order to afford him an opportunity to deny or explain the same and give the particulars of the conversations and circumstances under which the purported statement was made. *Nutter v. O'Donnell,* 6 Colo. 253; *Mullen v. McKim,* 22 Colo. 468, 45 Pac. 416; *Fort Lyon Canal Co. v. Bennett,* 61 Colo. 111, 156 Pac. 604. At no time, upon either direct or cross-examination, was the witness Watson asked whether he ever had made the statement that Stenborn and Berg had agreed to pay any of the costs of operation of his car; hence, the trial court was right in holding that no proper foundation had been laid for impeachment by the offered contradictory evidence. Even if such foundation had been properly laid, it is likely, though we do not so determine, that defendants would have been limited to the introduction of the contradictory portion of the written statement only, and would not be entitled to have it admitted in its entirety. Since the court ruled correctly in excluding Exhibit 4 on the ground adopted, we deem it unnecessary to consider the other serious ground of objection, notwithstanding it is elaborately argued in the briefs.

The further separate objections of defendant Ownbey to the giving of Instructions numbered 3, 10 and 11, grounded upon the premise that there were two separate accidents and two separate results, in effect are concluded by the disposition we have made of the other contentions. We are further of the opinion that Instruction numbered 7, was in no manner misleading, as defendants contend.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE YOUNG concur.