Walter Osinski, Appellee, v. Nell Benson and Ernest Janson, Appellants.

Gen. No. 43,003.

Opinion filed September 11, 1944.

BURT A. CROWE, of Chicago, for certain appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for certain other appellant; JOSEPH A. BAILEY and WILLIAM H. SYMMES, both of Chicago, of counsel.

ANDREW J. FARRELL, MARSHALL I. McMAHON and FINN & FITZPATRICK, all of Chicago, for appellee.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

Defendants separately appeal from a judgment for $11,000 entered against them in an action for personal injuries sustained by plaintiff while riding his bicycle in a southerly direction on Asbury avenue, in Evanston, at or near the intersection of that street with Cleveland avenue, on a dry, clear summer day about midafternoon.

Plaintiff testified that he entered Asbury at Main street, several blocks north of the scene of the accident, intending to turn east at Cleveland avenue; when about 50 feet north of Cleveland avenue he turned from near the west curb to the center of the street; he saw a south bound car 100 or 200 feet to the north; about 15 to 25 feet from the intersection he put out his left hand to indicate his intention to turn to the left and then placed it back on the handlebar and proceeded straight; that the right front side of the car hit him from the rear on the left side, turning his front wheel to the right so that he made a complete turn and was facing north; that when he was falling to the street he saw another car coming from the north toward him; this second automobile may have been 200 feet away; it struck him; that he had a feeling that something was pushing him or going over him, and that is all he remembered; the first automobile was going pretty fast and the second very fast.

Defendant Janson, the driver of the first car, testified that he entered Asbury avenue from Davis street, 15 or 20 blocks north of Cleveland; that he was traveling about 20 or 25 miles an hour and was at all times on the right hand side of the street; that he saw no traffic except plaintiff on a bicycle just north of Cleveland; that plaintiff was going straight south, and he, Janson,

passed him about the intersection of Asbury and Cleveland, plaintiff being about 2 or 3 feet to the right; that when he passed plaintiff, "through the corner of my eye it seemed like he was turning his wheel;" that he, Janson, noticed or sensed a slight brush on the right rear fender of his car when the front end of the car was 2 or 3 feet north of the south curb of Cleveland avenue; that he looked in the rear-view mirror and saw plaintiff on the bicycle dashing east across Asbury right in front of the car of his codefendant, Mrs. Benson, which was back of him about 30 feet or so; the bumper of the Benson car struck the bicycle and plaintiff fell to the street; the Benson car stopped; he, Janson, pulled to the right curb and when he got out of his car saw the plaintiff right in front of the Benson car and under the front bumper; the body was lying on the bicycle and "pushed headlong into the street;" part of the bicycle was under the front bumper; there were skid marks on the street at the intersection of Asbury avenue leading up to the Benson car; Mrs. Benson moved her car back; he did not see plaintiff give any signal that he was going to make a left turn and does not recall whether before the impact with his car he, Janson, turned suddenly to the left.

Mrs. Benson, defendant and driver of the second car, testified that she had three ladies with her; that she started south on Asbury from Dempster, about 10 blocks from Cleveland, following Janson's car at a speed not exceeding 20 to 25 miles an hour; she was 2 or 3 feet to the right of the center of Asbury and was about 25 or 35 feet north of Cleveland avenue when she saw plaintiff on the bicycle; he was then at the right rear bumper of the car ahead; he bumped into the right rear fender of that car, wabbled east and then north in the path of her car; she put on her brakes as fast and as hard as she could; her car skidded and came to a stop about the middle of the intersection of Cleveland avenue; she did not run against, upon or over plaintiff

at all; she did not leave her car but waited until the police came and told her she could go; before seeing plaintiff she noticed the car in front make a sudden swing to the left, swerving several feet to the inside over the center line; she did not see plaintiff extend his hand indicating he was going to turn; at no time that she followed Janson's car was his car on the east or left hand side of Asbury; from where she was sitting in her car when it came to a stop she could not see plaintiff.

Mrs. Van Kirk, who was riding in front with Mrs. Benson, noticed nothing until Mrs. Benson came to a very sudden stop about the center of Cleveland avenue, half way across; she got out of the car and went to the front; she saw the bumper of the automobile over the bicycle and plaintiff was stretched out north and south in front of the car; the car did not go over the bicycle or over or across plaintiff; Mrs. Benson did not get out of her car or move it forward or backward until the police came.

The Evanston police officer who arrived at the scene was in the army at the time of the trial and his testimony was given by deposition. He testified that when he arrived the Benson car was stopped in the south half of the intersection, a little north of the south curb of Cleveland avenue; the bicycle was directly in front lying crosswise, approximately touching the car, and 10 to 12 feet south was a man lying on his back injured; the Janson car was parked at the west curb of Asbury, 25 to 35 feet south of Cleveland; the only evidence on Janson's car of any collision was that the dust on the right rear fender had been scraped off as if it had been done when the bicycle tire came in contact with it; this mark was on the right rear fender about a foot above the lower edge and back of the rear wheel; at the intersection, starting at about the north curb of Cleveland avenue, there were skid marks about 24 feet long leading up to the rear wheels of the Benson car.

The negligence of the defendants was a question of fact for the jury, and their verdict, not being against the manifest weight of the evidence, cannot be disturbed by us. By this verdict negligence of each of the defendants is established. Defendants earnestly insist that upon the record there were two distinct and separate acts and circumstances on the part of each defendant; that it cannot be argued that they united in causing a single injury, and, as said by defendant Benson, "defendants in this case were acting independently of each other, that there was no concert or unity of design between them and that each was liable for his own tort and damage caused and no more." It is conceded by the parties that the courts of this state have not definitely passed upon situations exactly like the case at bar. Cases from other states decided upon factual situations similar to the situation before us have been cited.

Defendants rely upon *Young v. Dille*, 127 Wash. 398; *La Bella v. Brown*, 103 N. J. L. 491, and *Leishman v. Brady*, 39 Del. (9 W. W. Harr.) 559, 3 A. (2d) 118, involving automobiles. In *Young v. Dille*, most frequently cited, plaintiff brought suit against the owners and drivers of two automobiles but filed separate counts alleging distinct acts of negligence against each defendant; the jury returned a verdict against the owners and operators of each car, assessing damages against Dille, the owner and driver of the first car which struck plaintiff, at $400, and against the owner and driver of the second car striking plaintiff, at $3,600; there was no showing of a segregation of damages; on motion for a new trial plaintiff dismissed the action as to Dille and the court awarded a new trial as to the other defendants, "being of opinion that the segregation of damages by the jury in its verdict made said verdict improper and illegal." On appeal the granting of a new trial was affirmed, the court saying (404): "The cause seems to have been tried in the

court below on the theory that the defendants Dille and Harris were joint tortfeasors. But it seems to us manifest that they were not such, either if the facts be considered from the allegations of the complaint or by the proofs shown at the trial. To be joint tortfeasors, the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury. Neither of these conditions were here present."

The cases cited by defendants were commented upon in *Gibson v. Bodley,* 156 Kan. 338, in language which we adopt, as follows (347): "From these decisions it will be observed that if the test of joinder is that the injury must be single, then there could never be a joinder of actions against joint tortfeasors where the several negligent acts were successive although each negligent act, without any independent force or intervening efficient cause to break the connection between the successive acts, contributed directly and substantially to produce the final and complete result. Under such a rule it necessarily follows the tortious acts would need to occur absolutely simultaneously in order to constitute a single injury. Assuming the tortious acts were absolutely simultaneous, how could it even then be determined with any reasonable degree of accuracy what injury, or injuries, were caused by each separate wrongful act? Under such a rule it also is held to be immaterial that the injuries resulting from the successive acts are indivisible and that it is impossible to apportion the assessment of damages. (*La Bella v. Brown,* and *Young v. Dille,* both *supra.*) Such is not the rule in this State. In due deference to courts which adhere to it we do not desire to follow it. It does not conform to the weight of authority nor to what we conceive to be the more practical and the sounder doctrine." The court also said (346): "The subject of concurrent or successive negligent acts of joint tortfeasors in automobile cases, under circum-

stances substantially the same as those in the instant case, has received the critical attention and analysis of courts in various jurisdictions. It is true there is not complete harmony in the decisions. The great weight of authority, however, permits the joinder of causes of action under the same or similar circumstances as those here pleaded. (*Floun v. Birger* (Mo. App.), 296 S. W. 203; *Mason v. Reynolds,* 135 Neb. 773, 284 N. W. 257; *Berryman v. Motorbus Co.,* 228 Mo. App. 1032.)'' In *Alden v. Watson,* 106 Colo. 103, where defendants were held liable for successive impacts with plaintiff's automobile, the general rule of liability was asserted, and *Young v. Dille* distinguished, as follows (111): ''The case of *Young v. Dille,* 127 Wash. 398, 220 Pac. 782, strongly relied upon by defendants as supporting their position is not in point here, since the complaint in that case, differently from the one before us, pleaded *separate* injuries due to *separate* negligent acts and reversal was ordered because of the lack of evidence to sustain the separate assessments of damage. That the Washington courts are in accord with the general rule clearly appears from the cases of *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 Pac. 9; *Graves v. Flesher,* 176 Wash. 130, 28 P. (2d) 297, and *Thornton v. Eneroth,* 177 Wash. 1, 30 P. (2d) 951.'' In *Thornton v. Eneroth,* 177 Wash. 1, a conclusion similar to that reached in the present case was affirmed. There Thornton brought suit against the drivers of several cars for injuries sustained through successive impacts with the cars of the respective defendants; Eneroth, the driver of the first automobile, stopped his car upon the pavement upon his own side of the road because his windshield wiper failed to work effectively and ice formed on the windshield, obscuring his vision; his car was run into from the rear by a motortruck driven by Spencer, and immediately thereafter the plaintiff, Thornton, ran into Spencer's truck; Thornton was standing near the open door of his automobile when it

was run into by a car driven by Baker, causing an impact of the door of Thornton's car with him, knocking him down but not seriously injuring him; Thornton arose and went around his own car to observe whether any additional damage had been suffered; at this point, which was some minutes after the Thornton car collided with the Spencer car, another car, driven by defendant Mrs. Halverson, collided with the rear of the Thornton car, catching Thornton in such a way as to break the bones of his leg; he instantly dropped to the pavement and, while in a sitting position, another car, driven by Doris Brown, struck the Halverson car from the rear and Thornton was caught between the two cars and suffered severe injuries to his chest and ribs; Mrs. Brown was not made a party defendant. After holding that the questions of negligence of the various defendants was a question for the jury, the court said (9): "The next question is as to whether or not Eneroth and Mrs. Halverson, if guilty of negligence, are each chargeable with the total damages suffered from the two injuries, for certainly there were two separate and distinct injuries. It will be recalled that Mrs. Halverson's collision directly inflicted the leg injury and Mrs. Brown's collision directly inflicted the torso injury." The court held that it was for the jury to determine whether Eneroth was negligent and whether his negligence started a chain of events which was not completed before the final collision of the Brown car, and that negligence of Mrs. Halverson and Mrs. Brown would not as a matter of law release him of liability, and said (10–11): "Going a step farther, it is equally well-established that, where the negligence of two or more persons, even though acting independently of each other, united in causing an injury, they are joint tortfeasors, and are jointly and severally liable for the resulting damages. *Hellan v. Supply Laundry Co., supra; Young v. Dille,* 127 Wash. 398, 220 Pac. 782; *Lindsey v. Elkins, supra.* Applying the principles of

law announced, we conclude that Eneroth and Mrs. Halverson may be found responsible as joint tortfeasors for both injuries. Nor is this out of harmony with the case of *Young v. Dille, supra,* where it was held that a second tortfeasor was not liable for damages occurring before his own acts of negligence. Whether Mrs. Halverson was negligent and whether her negligence was a proximate cause of the later chest injury, directly caused by Mrs. Brown, are questions for the jury, especially when the facts show that Mrs. Halverson's collision not only broke respondent's leg but placed him in such a position that the later collision resulted in the chest injury. And while Mrs. Brown may have been negligent, still Mrs. Halverson cannot escape liability for the second injury if her negligence was found to have been the proximate cause thereof.'' The court did not have before it and did not pass upon the liability of Mrs. Brown, who, like Mrs. Benson in the present case, was the last person to contribute to the plaintiff's injuries. Under circumstances like those before us, the last as well as the first and intermediate tortfeasors are liable for all tort damages sustained by the plaintiff. *Gibson v. Bodley,* and *Alden v. Watson,* heretofore discussed; *Berryman v. People's Motorbus Co. of St. Louis,* 228 Mo. App. 1032; *Lewis v. Hunter,* 212 N. C. 504; and *Mason v. Reynolds,* 135 Neb. 773. This liability is independent of any showing of the actual damages inflicted by the respective tortfeasors. The record here shows that all or practically all of plaintiff's injuries resulted from the impact of Mrs. Benson's car with plaintiff and his bicycle, Janson's negligence putting plaintiff in the path of the Benson car, by which he was struck, before he could right or control the bicycle. If the damages could or should be apportioned between the defendants, Mrs. Benson is in no position to complain. The trial court did not err in submitting a verdict finding the defendants jointly liable.

For the same reasons there was no error in giving plaintiff's instruction No. 3, which authorized the jury on finding the issues for plaintiff, to return a verdict for all damages sustained by him. Defendant Benson contends that this instruction is in conflict with instruction No. 14 given on her behalf, which limited her damages to the injuries, if any, sustained by the impact of her automobile with plaintiff and his bicycle. The court erred in giving the latter instruction, but it was an error committed on behalf and at the request of the defendant Benson, and she cannot complain.

Complaint is made of the giving of plaintiff's instructions 4, 6 and 10, which defined in different terms the care required of the plaintiff, as tending to overemphasize this matter. As usual, in these cases, each party tendered, and the court gave, more instructions than were necessary to properly inform the jury of the issues involved, and each party was guilty of overemphasizing questions which to him appeared most vital.

Objection is also made to the giving of plaintiff's instruction No. 8, which is as follows: ''The court instructs the jury that if you believe, from a preponderance of the evidence and under the instructions of the court, that the accident in question was due to the joint negligence of both of the defendants, and that as a direct and proximate result of the joint negligence of both of the defendants, if you believe they were negligent, the plaintiff was injured, while he was in the exercise of ordinary care for his own safety, then you are instructed that you may find both of the defendants guilty; and, you are further instructed that if you should so find from such preponderance of the evidence that both of the defendants were guilty of the negligence charged, then you are instructed that it would be no defense for one of such defendants to show that the other defendant was also guilty of negligence, or was guilty of a greater degree of negligence.'' Defendants contend that this instruction, in the first place fails to limit the negligence of the defendants to that charged in

the complaint and that this omission is not cured by reference in the latter part of the instruction to the "negligence charged," because nowhere was the jury told of the allegations of the complaint. Examination of instructions given on behalf of each defendant shows the giving of instructions directing the attention of the jury to the "negligence charged," and of other instructions in which there is reference to negligence without restricting such negligence to that charged in the complaint. Instructions directing the jury's attention to charges of a declaration or complaint, where the jury is not advised as to the contents of the pleading, are generally condemned, but as said in *Krieger v. Aurora, E. & C. R. Co.*, 242 Ill. 544, cited by defendant Benson: "Substantially the same instruction has been before this court in many cases, and the giving of it has generally been held not ground for reversing a judgment." Upon the record in the case we do not believe there is much merit in defendants' contention that the failure of this instruction, in the first part thereof, to limit the negligence to that charged in the complaint and thereby permitting the jury to consider any negligence of the defendants, operated to the disadvantage of defendants. The question was raised as to whether or not the defendants could be held jointly liable, and the instruction appears to have been given primarily to direct the jury's attention to the liability of both defendants for joint negligence. Other instructions required plaintiff to prove by a preponderance of the evidence the negligence charged against each defendant. The complaint contains a general charge of negligence in the operation of the defendants' automobiles. There is no evidence tending to show any other negligence on the part of either defendant. We cannot conceive how defendants have or could have been injured by the instruction.

The jury assessed plaintiff's damages at $11,000. The evidence shows total medical and hospital expense of $3,400, and loss of wages approximating $2,600, or

a total pecuniary loss of $6,000. Complaint is made that the plaintiff was a gardener and the court must assume or take judicial notice that his employment covered only the summer months of the year. We cannot know judicially whether or not plaintiff was employed as a gardener only during certain periods of the year, and there is no evidence in the record relating to the subject. The evidence further shows that the plaintiff was in the hospital nine months; he had a multitude of abrasions all over his body and legs, a complete dislocation of the ankle joint, dislocation of the tibia and fibula from the astragalus; a fracture of the tibia, double fracture of the long bone, a transverse fracture of the humerus with overriding of the bones, and a fracture of the collar bone near the shoulder joint; good results were obtained as to the fractures and dislocations, but there is inability to get the arm up completely over his head as a result of the fracture of the clavicle and adhesions in the shoulder; there is a mild limitation of motion in his left ankle, and the plaintiff feels pain when he walks; he has no grasping power in his hand; he has headaches. At the time of the trial he was working as a night watchman and earning only $2 per night, or less than half his wages as a gardener. For the pain and suffering endured, limitations in the movement of the arms, the weakness of the hand and the pain when walking, some of which may reasonably be expected from the evidence to be permanent or at least to continue for some time, the jury allowed $5,000. We cannot say that this award is excessive.

The judgment of the trial court is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.