## No. 17,989.

### JOE ARMIJO, JR., ET AL. *v.* PEOPLE OF THE STATE OF COLORADO.

(304 P. [2d] 633)

Decided December 3, 1956. Rehearing denied December 31, 1956.

Messrs. JENKINS, STEWART AND TURSI, Messrs. SEAVY AND SEAVY, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. John W. Patterson, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to plaintiffs in error as defendants, or by name.

September 13, 1955, an information was filed in the district court of Pueblo county charging that defendants on the 10th day of September, 1955, "did then and there feloniously, wilfully and of their malice aforethought kill and murder one RAYMOND CARDENAS, contrary to the form of the statute in such case made and provided, * * *." September 26 following, defendants were arraigned and each entered a plea of not guilty. Trial was had beginning December 12, 1955, and the jury on December 15 returned its verdict finding each defendant guilty of murder of the second degree. Motion for new trial was filed and denied; sentences were entered on the verdict February 28, 1956, and Armijo was sentenced to the Colorado state penitentiary for a term of not less than thirty-five nor more than fifty years, and Trujillo to a term of not less than twenty-five nor more than forty years. Defendants, seeking reversal of these judgments bring the cause to this court by writ of error.

On the night of September 9, 1955, in Avondale, County of Pueblo, State of Colorado, the defendants engaged in a fight with Sanchez and Mares. This fight was stopped and the defendants taken inside a cafe called Chuck's Place. Within five minutes, defendants went outside and again engaged in a second fight with Sanchez and Mares. During this second fight Armijo took out a knife and cut Mares. Mares then hit Armijo with a chain. Mares and Sanchez then ran back of the "Arapahoe," which is about a block from the scene of

the fight. There defendants caught Sanchez, and while Trujillo held him Armijo inflicted two knife wounds in his abdomen, requiring hospitalization and surgery. Defendants then started back toward Chuck's Place and enroute encountered the deceased, Cardenas, who up to this point had not been involved in either of the preceding fights. Cardenas was seated in the right hand front seat of a parked car, with the right front door open, and defendants pulled him from the car. Armijo asked Cardenas if he had hit him with the chain and Cardenas answered "No" and stated, "I don't even know you." Both defendants were holding him and Armijo then stabbed him in the stomach with a knife. He was taken to Corwin Hospital in Pueblo where he was treated by Dr. Weaver for a stab wound of the abdomen from which he died on September 11, 1955.

Counsel for defendants present their argument under fourteen titles. While some of these separate captions are merged in the following discussion we answer every point made. No good purpose would be served in detailing the points relied on because the nature of each of them will be apparent from the substance of the questions hereinafter set forth and answered.

Questions to be Determined.

First: *Did the trial court commit error in refusing to instruct the jury concerning the offense of voluntary manslaughter?*

██ This question is answered in the negative. It is argued by counsel for defendants that there was evidence of a provocation sufficient to cause an "irresistible passion under the influence of which defendants stabbed the deceased. Seven Colorado cases are cited as authority for the point urged. The first of these in point of time is *Crawford v. People,* 12 Colo. 290, 20 Pac. 769; and the last is *Read v. People,* 119 Colo. 506, 205 P (2d) 233. We have read each opinion cited and have no hesitancy in saying that not one of them is applicable to the facts of this case, concerning which there is little

or no dispute. We agree that, as stated in *Read v. People* *supra*, when there is competent evidence which could conceivably reduce a homicide to manslaughter, the defendant is entitled to an instruction thereon. No such evidence can be found in this record.

A review of the facts of each of the cases cited by counsel for defendants discloses that the homicides involved occurred *during* the affray, and that the homicides were unintentional, accidental, a result of misadventure, or in self-defense, and there was testimony to these facts. Under those circumstances, which are not present in the instant case, we held it was error not to instruct as to manslaughter. However, another principle of law applicable here is just as firmly established in Colorado. In the case of *Smith v. People,* 1 Colo. 121, the court said:

"If, in a case of felonious homicide, the evidence shows the killing to have been deliberate and intentional, there is no question of manslaughter presented, and therefore no reason for submitting that question to the jury." This principle ever since has been followed by this court. One of the more recent decisions in which the rule was applied was *Williams v. People,* 114 Colo. 207, 158 P. (2d) 447. In the instant case the evidence discloses a a case of deliberate and intentional homicide, and the rule of the *Smith* case, supra applies. The court did not err in refusing defendants' tendered instruction No. 1.

It is argued strenuously that defendants had been engaged in "mutual combat" with others (but not with deceased); that one of them had received a "blow with a chain"; and that it became a jury question as to whether he acted in a state of "heat of blood" induced thereby. The "chain" to which reference is made is a small piece of what might well have been an oversized watch chain or an undersized leash chain. The deceased, under the undisputed evidence, had no part in any "combat" mutual or otherwise. The "mutual combat" which defendants had with others had terminated, re-

sulting in a stab wound inflicted upon Sanchez by defendants. They were walking back to Chuck's Place after having vanquished their foes in any "mutual combat" that they had. After having once walked past the car in which deceased was sitting they came back to it and, without justification or provocation of any kind whatever, they pulled deceased out of the car and inflicted the stab wound with unquestioned premeditated intent to do so. Not one word in any case cited in the brief herein can possibly be construed to support the proposition that defendants can avoid the consequence of their deliberate, intentional act on the ground of "mutual combat" or "hot state of the blood." If during the progress of the fight between the defendants and Sanchez and his friend, defendants had *unintentionally* or *accidentally* injured or killed an innocent bystander a different situation would be presented and the cases cited by defendants' counsel would be applicable. The reference to *Wharton on Homicide*, 3rd ed. page 290, emphatically is not applicable to the facts in this case, and we are satisfied that the court was fully justified in refusing to consider that the "mutual combat" doctrine was applicable.

Second: *Did the trial court err in permitting Sanchez and Mares to testify to the fighting and stabbing of Sanchez which immediately preceded the attack made by defendants upon the deceased?*

■ This question is answered in the negative. The court instructed the jury that the events which took place prior to the stabbing of deceased should be considered "only so far as you deem them explanatory of the events leading up to and surrounding the acts charged in the information, and evidence of any crime committed by the defendants or either of them prior to the acts with which they are charged in the information must not be considered by you for any purpose except that of determining the intent with which the acts charged in the information is done, * * *." The

evidence was properly admitted for the purposes to which it was limited by this instruction. *Torbert v. People,* 113 Colo. 294, 156 P. (2d) 128; *Perry v. People,* 116 Colo. 440, 181 P. (2d) 439.

There is another well-established rule under which the evidence was clearly admissible. Other offenses may be shown in evidence when they are so interwoven with the principal transaction that it is necessary to show them in order to give a fair and true understanding of the offense which is charged in the case at bar. *Abshier v. People,* 87 Colo. 507, 289 Pac. 1081.

Third: *Did the trial court err in giving instruction No. 7 which was the statutory definition of murder in the first degree?*

This question is answered in the negative. It is argued that because the instruction contained the full statutory definition without striking therefrom the reference to murder "by poison, or lying in wait, or torture," error was committed in that instructions were given concerning which there was no evidence. The instructions must be taken and considered as a whole. By other instructions given, the issues were properly defined and limited and no misunderstanding thereof could possibly have arisen in the minds of the jury. Moreover, the jury did not return a verdict of guilty of first degree murder. Assuming that the instruction was erroneous (which we do not hold) defendants cannot complain under the well-established rule which we quote from *Walker v. People,* 126 Colo. 135, 248 P. (2d) 287, as follows:

"The rule that the accused cannot complain of an error in instructing the jury as to the higher degree of the crime charged where the jury is properly instructed as to the lower degree and returns a verdict of guilty of the lower degree is especially applicable with respect to charges upon the different grades and degrees of culpable homicide. Thus, error in a charge upon first degree murder is not to be deemed prejudicial to one

convicted of a lower degree of murder, voluntary manslaughter, or involuntary manslaughter * * *."

The rule above quoted applies with equal force to objections, made by counsel for defendants, to other instructions given by the court with reference to the crime of first degree murder.

Fourth: *Did the trial court err in giving Instruction No. 16?*

■ This question is answered in the negative. Instruction No. 16 contained the following language:

"If a sane person, without legal justification or excuse intentionally uses a deadly weapon upon the person of another at a vital part, and inflicts a mortal wound, under circumstances showing no considerable provocation, then intent to kill may be presumed or implied as an inference of fact from the act itself * * *."

The objection to this instruction was as follows: "Defendants further object to the giving of Instruction No. 16 and its reference to the use of a deadly weapon, as the evidence does not show defendants had a deadly weapon in their possession." The record is full of evidence that defendants had a knife in their possession and used it in stabbing two persons, one of whom died from the wounds so inflicted. In 40 C.J.S. §25, p. 875, we find the following:

"A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, * * *."

Fifth: *Did the trial court err in refusing to give the instruction tendered by counsel for defendants dealing with the subject of absence of motive for the commission of the crime charged?*

This question is answered in the negative. The court refused tendered instruction No. 3 which was as follows:

"You are further instructed that an apparent absence of motive on the part of the person accused in a prosecution for homicide should be weighed by you together with the other evidence. For the presence or absence of

motive is always a subject to be considered in the establishment of the presence or absence of malice. And although the mere absence of evidence of motive does not in and of itself require acquittal nevertheless the absence of motive for killing may be regarded as a circumstance in favor of the accused."

In *Lowe v. People*, 76 Colo. 603, 234 Pac. 169, the defendant submitted an instruction which would have informed the jury, " * * * that on a murder charge expressions of good will and acts of kindness on the part of the defendant toward the deceased are always important evidence as showing what was his general disposition towards the deceased and may properly be considered by the jury as evidence as to whether or not the defendant could or could not be guilty of the offense charged." The trial court refused the tendered instruction. In holding that no error was committed thereby we said: "The trial court has no duty to select all the salient points in the evidence, favorable and unfavorable, and specifically call them to the attention of the jurors. The rules of law necessary for their guidance and essential to their comprehension of the questions submitted for their decision should of course be given, but beyond that point elucidation ends and confusion begins." This rule was again approved in *Leopold v. People*, 105 Colo. 147, 95 P. (2d) 811.

In *McKenna v. People*, 124 Colo. 112, 235 P. (2d) 351, with reference to the refusal of the trial court to give an instruction calling specific attention to one phase of the evidence, we said:

"Tendered instruction number 3 likewise is improper as it calls particular attention to one element of the evidence, whereas the practice has been to eliminate such procedure and instruct the jury in general terms. This, the court did in its instruction number 19, whereby it informed the jurors that they were to consider all of the evidence in the case."

The fact that the evidence may not have disclosed

a motive for the crime should not have been emphasized above other portions of the evidence by a special instruction directed to that subject. It is not necessary to prove a motive as an essential element in the crime of murder. Absence of a motive is no defense to a charge of murder. In the instant case under all the evidence and the instructions as a whole, whatever importance should have been attached to any possible lack of motive was perfectly obvious, and the court did not err in refusing to place emphasis on it by a special instruction.

Sixth: *Did the trial court err in admitting in evidence Exhibits A and B which were photographic color slides that were projected on a screen at the time of the trial?*

▮▮▮ This question is answered in the negative. Black and white enlarged prints of the same exhibits also were introduced at the trial. The photographs were taken of the corpse and showed the knife wound inflicted by defendants. They also showed the incision made in the surgical operation performed in an effort to save the life of deceased, and the fact that this incision is shown forms the major objection of. defendants' counsel to the admission of the exhibits in evidence. We need do no more than direct attention to the opinion of this court in *Martinez v. People,* 124 Colo. 170, 235 P. (2d) 810, to fully answer this argument of counsel.

Seventh: *Did the trial court err in permitting Dr. Weaver to testify concerning the stab wounds inflicted by defendants on the body of Alfred Sanchez?*

[11] This question is answered in the negative. It is sufficient to refer to the discussion hereinabove appearing under the second question answered, which is applicable to and decisive of this point. To the authorities hereinabove cited we add *Bacino v. People,* 104 Colo. 229, 90 P. (2d) 5, wherein we stated that the rule under which evidence of similar offenses is admitted is particularly applicable where " * * * the other transactions were so connected in point of time with the offense

under investigation and so similar in character, that the same motive could be imputed as to all of them."

Eighth: *Did the trial court err in refusing to give tendered instruction No. 2 which dealt with the question of the "knowledge," "design," "consent," or "connivance" on the part of an accomplice which must be established in order to justify his conviction as a principal?*

 This question is answered in the negative. Instruction No. 17, which the court gave the jury included the statutory definition of an accessory and concluded with the following statement, " * * * mere presence alone of one at the scene of a crime is not sufficient to make such a person an accessory to the commission of such crime." Instruction No. 18 correctly states the law applicable to the case in this connection as follows:

"You are further instructed that one cannot be held guilty of murder as an aider and abettor if he has acted without knowledge or malice on his part and was ignorant of the malicious motives and felonious intent on the part of the actual slayer."

These instructions gave the defendants full benefit of all to which they were entitled with reference to the content of tendered instruction No. 2, and the refusal of the trial court to give it was proper.

Ninth: *Did the trial court err in limiting the right of counsel for defendants to cross-examine the witness Mares?*

 This question is answered in the negative. During the cross-examination of the witness Mares, counsel for defendants elicited the information that on September 25, following the offense, he called on Mares to find out what he knew about the case. The record discloses the following testimony:

"Q. Do you remember my asking you what your version of this case was? A. Yes. Q. And what did you tell me? A. I didn't tell you nothing.

"MR. KETTELKAMP: If the Court please, I object to that. It calls for hearsay evidence. And if he is trying

to impeach this witness, that's not a proper foundation for impeachment. If he wants to impeach, there's a proper way but not by asking what he told him.

\* \* \*

"THE COURT: I will sustain the objection at this time.

"MR. TURSI: Exception, Your Honor. The purpose of the line of questioning is to show bias and prejudice."

The objection was good and the trial court ruled correctly in sustaining it. Counsel for defendants pursued the matter no further and no offer of proof was made. In *Alden v. Watson,* 106 Colo. 103, 102 P. (2d) 479, we held that:

"It is never proper to permit a party to prove that a witness for the adverse party made statements previous to the trial at variance with his testimony on the witness stand, without first having called the attention of the witness to the particular contradictory statements, as well as the time and place it is claimed such were made, in order to afford him an opportunity to deny or explain the same and give the particulars of the conversations and circumstances under which the purported statement was made."

At no time was Mares asked if he had made any certain statement from which it might appear that he was biased or prejudiced.

There is no merit in the argument that the trial court erred in admitting Exhibit 1, which was a statement signed by Ruby Martinez after the offense and prior to the trial, nor did the trial court err in admitting the statement of the deceased to the effect that they had cut him. This latter statement was clearly admissible as part of the res gestae.

The judgment is affirmed.

MR. JUSTICE HOLLAND dissents.